**TERRA INTERNATIONAL, INC.,**
**a Delaware corporation,**
**Plaintiff,**

**v.**

**MISSISSIPPI CHEMICAL CORPO-**
**RATION, a Mississippi corpora-**
**tion, Defendant.**

**No. C 95–4088.**

United States District Court,
N.D. Iowa,
Western Division.

April 5, 1996.

George Zelcs and Dean S. Rauchwerger of Clausen Miller, P.C., Chicago, Illinois, Terrence C. McRea of Zelle & Larson, Dallas, Texas, Gregg Williams of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, Iowa, for Terra International.

Steve Eckley and Randy Duncan of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, Iowa, Jay Brumfield, Jackson, Mississippi, William L. Smith, of Brunini, Grantham, Grower & Hewes, Jackson, Mississippi, for MCC.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND DEFENDANT'S MOTION TO TRANSFER OR STAY

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ...................................1340
 A. Procedural Background ..............................................1340
 1. The lawsuits ..................................................1340
 2. The TRO and the venue motions....................................1341
 3. Further briefing and discovery disputes ............................1341
 B. Findings Of Fact.................................................1343

 1. "Bad faith" and "surprise" ............................................ 1343
 2. The forum selection clause ........................................... 1344

II. LEGAL ANALYSIS ..................................................... 1345
 A. Intertwining Of The "First–Filed" And "Transfer" Analyses ................. 1345
 1. The "first-filed rule" ............................................ 1345
 2. Exceptions to the rule ........................................... 1346
 a. The "compelling circumstances" exception ........................... 1346
 b. "Balance of convenience" exception ................................ 1348
 c. The "dead heat" exception ....................................... 1350
 B. The "Transfer" Analysis ............................................ 1354
 1. The "transfer" statute and its purpose ............................. 1355
 2. Factors in the "transfer" analysis ................................. 1357
 a. "Balance of convenience" ........................................ 1358
 b. The "interest of justice" ......................................... 1362
 c. Other "relevant factors" ......................................... 1364
 3. Forum selection clauses .......................................... 1365
 a. The weight to be given the clause in a "transfer" analysis ............ 1365
 i. Stewart and its progeny ....................................... 1366
 ii. "Mandatory" and "permissive" forum selection clauses .......... 1370
 iii. Is this clause entitled to "significant" weight or "no weight"? .... 1373
 b. Applicability of the forum selection clause ......................... 1375
 i. The syntactical knot .......................................... 1375
 ii. General scope of forum selection clauses ...................... 1377
 iii. The forum selection clause in this case ....................... 1381
 C. Certification For Interlocutory Appeal ................................. 1382

III. CONCLUSION ....................................................... 1385

Alexander the Great's simple solution is unavailable to this court as it confronts the Gordian knot[1] of tangled interests and venue questions in litigation stemming from the catastrophic explosion of a fertilizer plant in northwest Iowa on December 13, 1994. The explosion which caused deaths, injuries, and enormous damage. The plaintiff corporation is the operator of the fertilizer plant. The defendant corporation is the inventor, designer, and licensor of the ammonium nitrate neutralizer technology that allegedly precipitated the explosion. The roles of the parties are reversed in parallel litigation brought by the present defendant in federal court in Mississippi.

Presently before the court is the question of where these lawsuits should be litigated. The plaintiff seeks to enjoin permanently the lawsuit brought by the defendant in Missis-sippi, while the defendant seeks to transfer this lawsuit to Mississippi federal court pursuant to 28 U.S.C. § 1404 or, failing that, to stay the present litigation. Each of the parties at first asserted its own "Alexandrian" solution to cut through the tangle: the plaintiff asserted that the question of the proper forum for this lawsuit could be resolved simply by application of the "first-filed rule," requiring the enjoining of the defendant's second-filed action in Mississippi, while the defendant initially asserted, with equal certainty and vehemence, that the venue question could be resolved simply by invoking the forum selection clause in the licensing agreement between the parties. Following filing of many briefs, an evidentiary hearing, and oral arguments, the court still lacks a simple "Alexandrian" solution, yet it must nevertheless unravel the tangled web of complex ven-

---

1. Gordius, King of Phrygia, tied his chariot to a hitching post before the temple of an oracle with an intricate knot, which, it was prophesied, none but the future ruler of all Asia could untie. In the course of his conquests, Alexander the Great came to Phrygia, and, frustrated with his inability to untangle the knot, simply sliced through it with his sword. His subsequent success in his Asian campaign has been taken to mean that his solution to the "Gordian knot" fulfilled the prophesy. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 460 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, *Mythology* 48 (Fuller abridged ed. 1959).

ue issues assisted by the parties' excellent briefs and spirited oral arguments.

## I. INTRODUCTION AND BACKGROUND

The court has twice considered the factual and some of the procedural background to this litigation in published rulings. *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 913 F.Supp. 1306, 1308–13 (N.D.Iowa 1996) (ruling on motion for discovery guidance as to *ex parte* contacts with current and former employees after same hearing in which the present motions were argued); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 896 F.Supp. 1468, 1469–72 (N.D.Iowa 1995) (granting TRO to enjoin MCC from seeking to enjoin or restrain Terra's lawsuit in Iowa). The court will therefore recite only the portions of the procedural history and the facts necessary to provide the background to its consideration of the present venue questions.

### A. Procedural Background

#### 1. The lawsuits

This lawsuit, filed on August 31, 1995, at 12:35 p.m., arises from the explosion of plaintiff Terra International's fertilizer plant in Port Neal, Iowa, on December 13, 1994, which caused deaths, injuries, and devastation of the plant.[2] Later on the afternoon of August 31, 1995, MCC also filed suit against Terra in the United States District Court for the Southern District of Mississippi, Western Division, in a case captioned *Mississippi Chem. Corp. v. Terra Int'l, Inc.*, No. 5:95CV127 (S.D.Miss.). The lawsuits are not mirror images of each other, but do involve overlapping claims as well as similar factual and legal issues. Count I of the present lawsuit, filed by Terra against MCC, states a negligence cause of action. It alleges that

MCC breached a duty of care and caution in designing the MCC technology for use by Terra and in providing guidance and services to ensure that the technology would be reasonably safe.[3] Count II alleges strict liability of MCC on the grounds that the design of the MCC technology was unreasonably dangerous and defective, that these conditions were unknown to Terra, and that these conditions were the proximate cause of the December 13, 1994, explosion. On both counts, Terra seeks damages in an unspecified amount in excess of $50,000, an award of all costs, prejudgment and post-judgment interest, and such other and further relief as the court may deem just and proper. Jurisdiction in this lawsuit is founded on diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332, and venue is alleged under 28 U.S.C. § 1391(a) and (c) in that a substantial part of the events or omissions giving rise to the claims occurred in Woodbury County, Iowa, or a substantial part of the property that is the subject of this action is situated in this judicial district, and the defendant is subject to personal jurisdiction and/or resides in this judicial district.

In MCC's lawsuit against Terra, filed in Mississippi federal court, Count I seeks declaratory relief that MCC "did not defectively design the neutralizer [at the center of the Port Neal explosion] ... and is not liable to Terra for damages arising from the explosion under any theory of recovery." In Count II, MCC seeks damages for a tort, alleging that Terra's incident investigation committee report, a July 17, 1995, press release, and an address given by Mark Rosenbury, a Terra vice president, were defamatory of MCC. MCC alleges significant loss of business as the result of Terra's allegedly defamatory communications.

---

**2.** Related lawsuits in this district, *Griffin, et al. v. Mississippi Chem. Corp.*, No. C95–4090 (N.D.Iowa) (filed on August 31, 1995, at 3:22 p.m., against defendant Mississippi Chemical Corporation by seventy-two individual plaintiffs allegedly damaged by the explosion of the Terra plant on December 13, 1994, asserting causes of action against MCC based on theories of negligence and strict liability, and breach of express and implied warranties), and *Sahlfeld, et al. v. Mississippi Chem. Corp.*, No. C95–4092 (N.D.Iowa) (filed on September 1, 1995, at 4:35

p.m., and also alleging negligence and strict liability causes of action and breach of express and implied warranties, as well as a claim for loss of consortium, against MCC), have been settled.

**3.** Terra's causes of action in this lawsuit and MCC's causes of action in its Mississippi lawsuit are quoted in one of the court's previous rulings, *see Terra Int'l*, 896 F.Supp. at 1470–72 & nn. 2–5, and therefore need not be repeated here.

## 2. The TRO and the venue motions

Once both lawsuits had been filed, Terra notified the court of its intention to file a motion for an emergency temporary restraining order (TRO) in this court to enjoin the prosecution of the litigation between the parties brought by MCC in the Mississippi federal court. A written copy of the motion for an emergency TRO was ultimately filed on September 6, 1995, although the court had previously received a written courtesy copy. After preliminary telephone conferences on Labor Day, September 4, 1995, and a hearing on September 5, 1995, the court entered a TRO much more limited in scope than Terra had originally requested. The TRO enjoined MCC from seeking to enjoin or restrain Terra's lawsuit in Iowa for a period of up to 120 days. The court also directed that not later than sixty days from the date of its order granting the TRO, the parties should file motions to transfer or dismiss or for permanent injunctions, that responses be filed within a further twenty-one days, and replies within a further seven days. These deadlines for filing of motions and supporting briefs were later extended by order of the court on October 31, 1995, to allow the parties to file their motions after undertaking depositions of Terra CEO Burton Joyce. In the October 31, 1995, order, the court also set a hearing on any pending motions for January 15, 1996, and extended the TRO to and including February 16, 1996, to give the court time to resolve the pending motions.

Within the extended deadlines set by the court, Terra moved for a permanent injunction against MCC's prosecution of its lawsuit in Mississippi on December 15, 1995. That same day, MCC filed a timely motion to transfer this lawsuit to Mississippi federal court or to stay this lawsuit pending disposition of the Mississippi litigation. Terra submitted a brief in support of its own motion on December 15, 1995, and a brief in resistance to MCC's motion to transfer or stay on January 5, 1996.[4] MCC submitted a brief in support of its motion to transfer or stay on December 15, 1996, and a resistance to Terra's motion for permanent injunction on January 5, 1996.[5] The parties both filed reply briefs on January 12, 1996.

This matter, as well as another pending motion disposed of in a prior order, dated January 25, 1996, came on for hearing on January 15, 1996. At the hearing, plaintiff Terra International was represented by counsel George Zelcs and Dean S. Rauchwerger of Clausen Miller, P.C., in Chicago, Illinois, and by Terrence C. McRea of Zelle & Larson, in Dallas, Texas, as well as by local counsel Gregg Williams of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., in Sioux City, Iowa. Defendant MCC was represented by its local counsel, Steve Eckley and Randy Duncan of Duncan, Green, Brown, Langeness & Eckley, P.C., in Des Moines, Iowa, and by its general counsel Jay Brumfield, of Jackson, Mississippi, and by attorney William L. Smith, of Brunini, Grantham, Grower & Hewes in Jackson, Mississippi.

## 3. Further briefing and discovery disputes

The arguments of counsel on the venue issues were spirited and informative, but nonetheless required the court to enter an order for supplemental briefing on the venue issues. Therefore, supplemental briefs on venue issues were originally due on January 25, 1996. A discovery dispute intervened, however, causing the court to order an extension of the deadlines for supplemental briefs until seven days after certain discovery pertinent to the venue issues and the licensing agreement involved here had been provided by MCC and found satisfactory by Terra. Terra filed a status report on February 7, 1996, as required by court order, indicating that satisfactory arrangements had been made between the parties for production of the documents related to the licensing agreement, and that Terra anticipated receiving those documents within the next few days. Terra stated that it was prepared and able to

---

4. Both briefs were overlength, and Terra's motions to file such overlength briefs were granted on December 19, 1995, as to its principal brief, and January 10, 1996, as to its resistance brief.

5. Both of MCC's briefs were likewise overlength. Leave to file these overlength briefs was granted on December 19, 1995, and January 5, 1996, respectively.

file its supplemental brief within seven days of actual receipt of the withheld documents. On February 22, 1996, Terra filed a further status report, stating that it had received and reviewed the requested documents and found them satisfactory. Therefore, Terra stated that both parties were prepared to file their supplemental briefs on all pending motions on or before February 28, 1996. The parties did in fact file their supplemental briefs on February 28, 1996.

That, however, was not the end of the impediments to final disposition of the pending motions. Instead, just prior to issuance of a ruling, on March 9, 1996, the court was notified by counsel for MCC that MCC anticipated filing a motion to compel and/or request for *in camera* inspection of certain documents in Terra's possession that MCC assumed were relevant to the venue issue currently before the court and which Terra asserted were privileged. The court advised counsel for both parties by letter that the court considered it would be appropriate to withhold its ruling on the venue questions until any discovery dispute related to venue had been resolved. Therefore, the court advised counsel that it would withhold the filing of its ruling until after March 18, 1996, in order to give MCC time to file whatever discovery motion it deemed appropriate. The court advised counsel that if MCC filed a discovery motion pertaining to the venue question on or before March 18, 1996, the court would further withhold its venue ruling until that discovery motion had been resolved.

On March 15, 1996, counsel for MCC advised the court by letter that the parties had been unable to resolve the eleventh-hour discovery dispute, and counsel for MCC therefore requested an extension of one day to file its motion for *in camera* inspection of documents owing to insufficient time after the last-minute breakdown of negotiations to prepare the necessary motion.

On March 19, 1996, MCC filed a motion to compel production, or, alternatively, for *in camera* inspection of documents Terra asserted were privileged. Although the court had at first advised the parties that it would forestall ruling on the pending venue motions until the discovery dispute involving venue-related materials was resolved, upon perusing MCC's motion to compel, which more fully explained what documents were at issue, the court concluded, in an order dated March 19, 1996, that, even if discoverable, these documents would not be necessary to the court in its disposition of the pending venue motions. The court therefore stayed disposition of MCC's March 19, 1996 discovery motion until after a determination had been made on the venue motions. On March 21, 1996, the court entered an order extending the TRO for another thirty days or until such time as the court disposed of the pending venue motions.[6]

Despite this long and tortuous procedural history, the motions for permanent injunction and to transfer or stay are now fully submitted.[7]

---

**6.** Terra had moved for such an extension prior to expiration of the TRO on February 16, 1996. At that time, the court had anticipated that its ruling on the venue motions would be handed down shortly, and that that ruling, whatever it was, would moot any extension of the TRO. However, the discovery disputes recounted above intervened, and, in light of the delays, the lack of any resistance to the extension, and in the interest of maintaining the status quo pending disposition of the venue motions, the court entered the thirty-day extension of the TRO on March 20, 1996.

**7.** After this court heard arguments on the motions for permanent injunction and to transfer or stay, the Mississippi federal court entertaining MCC's lawsuit entered its ruling denying Terra's motion to transfer the Mississippi litigation to this district. That ruling considered "whether the ... 'forum selection' clause outweighs the other factors to be considered under § 1404(a),

as the § 1404(a) factors favor the defendant Terra," including the "first-filed" rule. *Mississippi Chemical Corp. v. Terra Int'l, Inc.*, Case No. 95–cv–127BrN, 1996 WL 293764 (S.D.Miss.), Order Denying Defendant's Motion To Transfer Venue of January 31, 1996 (hereinafter "Mississippi Order of January 31, 1996"), p. 3. The Mississippi court found that the forum selection clause does cover the claims made in the Mississippi case, is unambiguous and valid, and is entitled to substantial deference under the law of the Fifth Circuit Court of Appeals. *Id.* at 3–4. The court found that Terra therefore had to *"prove* that the enforcement of the clause would effectively deprive it of its day in court," and that Terra had not met that burden. *Id.* at 5. More specifically, in considering whether the § 1404(a) factors demonstrated a deprivation of Terra's day in court, the court concluded that when parties have chosen a forum via a forum selection

## B. *Findings Of Fact*

The court finds that the proper analysis of the present venue motions requires, first, identification of the factors relevant to disposition of the motions, then an examination of those factors in light of the facts and circumstances in this case. Thus, it would be more efficient to set forth the pertinent facts and circumstances as the court considers each factor in turn, rather than to set forth a body of facts with little indication of their ultimate significance. Therefore, the court will here set forth only those findings of fact that have overarching significance in this venue dispute. Other necessary findings will appear in the legal analysis to follow.

### 1. *"Bad faith" and "surprise"*

■ The parties have each asserted that the filing of the other's complaint was either a "surprise" or an act in "bad faith." Before filing the present lawsuit, Terra provided a courtesy copy of its complaint to MCC by sending it Federal Express on August 30, 1995, for next morning delivery. As the court noted above, this lawsuit was filed on August 31, 1995, at 12:35 p.m. Later that same afternoon, MCC's suit against Terra was filed in Mississippi federal court. MCC alleges that Terra's lawsuit came as a surprise, because Terra's CEO, Burton Joyce, had advised MCC CEO and President, Charles Dunn, that Terra was not contemplating any lawsuit against MCC as the result of the Port Neal explosion. Therefore, MCC argues, the filing of Terra's lawsuit was in "bad faith," while any "delay" in the filing of its own lawsuit until after Terra's suit was filed was the result of careful review of information and preparation of a complaint. MCC asserts that the filing of its declaratory judgment and defamation action was not planned as a preemptive strike on which Terra beat MCC to the punch.

For its part, Terra states that no assurances concerning its ultimate plans to file or not file any lawsuits were ever given. Rather, Terra characterizes Mr. Joyce as telling Mr. Dunn only that at the time of Terra's press release on July 17, 1995, presenting Terra's preliminary conclusions concerning the explosion, he did not personally intend for Terra to take legal action against MCC, although he did not know what legal action Terra's insurers might be planning. Terra states that the present lawsuit, essentially the long foreseen suit of its insurers, had to be brought in Terra's name under Iowa law, because it seeks judgment for damages in excess of insurance coverage. Terra, in turn, asserts that it had no notion that MCC was planning to file suit against it in Mississippi until MCC's declaratory judgment and defamation complaint was filed.

The court doubts, from their nature, that either of the complaints was conceived or drafted in a heated rush to win a race to the courthouse, but the court is certain that the complaints would not have been filed the same day by coincidence. Rather, they were filed the same day only because MCC received the courtesy copy of Terra's complaint. The court also does not find credible

clause, they have effectively admitted that the chosen forum is the most convenient one, and the convenience of the parties should therefore not even be considered. *Id.* at 7. Turning, to the convenience of witnesses, the court concluded that both parties would be able to procure experts, officers, and employees as witnesses in either forum, but that a comparison of other witnesses did weigh in favor of the Iowa forum, although not sufficiently so to override the forum selection clause. *Id.* at 7–10. The court also rejected Terra's argument that witnesses would need to view all of the evidence collected in Terra's Iowa warehouse, and noted that substantially identical neutralizer technology in working order could now be seen in Mississippi, but not in Iowa. *Id.* at 10. The court also observed that the "thousands" of documents purportedly relevant to the dispute could be transported to Mis-

sissippi. *Id.* Thus, although "access to proof" might slightly favor Terra, again the edge was not sufficient to overcome the forum selection clause. *Id.* The Mississippi court recognized that litigating in Mississippi might be more burdensome for Terra than for MCC, but that burden was not so oppressive as to deprive Terra of its day in court. *Id.* at 11. Furthermore, the court opined that the likelihood of a fair trial was higher in Mississippi than in Iowa, where the local effects of the explosion would be a part of the general experience of any members of the jury panel. *Id.* Finally, the court rejected any argument that the first-filed rule could defeat a forum selection clause, because such a result would make the negotiation of forum selection clauses meaningless. *Id.* at 12. Thus, the court denied Terra's motion to transfer venue of the Mississippi litigation to Iowa. *Id.* at 13.

the rather disingenuous assertions by each party of surprise that the other had filed suit. As the court observed in its order granting a TRO in this litigation, it has been or should have been apparent to the parties since the explosion on December 13, 1994, or at least since investigations early in 1995 as to the cause of the explosion, that litigation of the sort brought by each party here was likely to be brought, either by Terra or its insurers, or by MCC against Terra, and the sole question was when. Consequently, nothing should have suggested to MCC that the issues raised in this litigation were or would be resolved without litigation instituted by Terra or its insurers. Even accepting that Burton Joyce may have indicated to Charles Dunn that he did not intend to initiate a lawsuit by Terra against MCC, Charles Dunn's deposition testimony indicates that he clearly understood that Mr. Joyce was not guaranteeing that no suit would ultimately be filed, either by Terra or by Terra's insurers. Similarly, Terra could hardly be surprised, in light of the finger-pointing at MCC in Terra's incident investigation report, that MCC would seek to protect itself either from liability or from negative fallout of other kinds by instituting a lawsuit of its own. The court finds no "bad faith" by either party in instituting its own lawsuit. Even so, this "race to the courthouse" is, in realistic terms, a "dead heat," and the court will consider in the proper place how much difference a few hours in the filing of the two complaints should make in the determination of which of these lawsuits goes forward or where these lawsuits are litigated.

### 2. The forum selection clause

■ MCC asserts that venue in both this case and its own lawsuit in Mississippi should be governed by the choice of forum in the licensing agreement whereby Terra acquired MCC's technology for use in the Port Neal plant. On April 28, 1980, the parties entered into a licensing agreement under which MCC agreed to furnish Terra with technical information and services necessary for Terra's use of MCC's neutralizer technology at the Port Neal facility. The licensing agreement contained a forum selection clause, which MCC asserts is applicable to both its claims

and Terra's claims, and therefore is either controlling or persuasive on the venue questions before the court. That clause, with emphasis added, reads as follows:

> This Agreement will be construed in accordance with the laws of the State of Mississippi. *Any dispute or disputes arising between the parties hereunder,* insofar as the same cannot be settled by friendly agreement, *will be determined in the District Court of the United States for the Southern District of Mississippi* and, for the purposes of instituting such suit, COMPANY hereby consents to service in connection therewith through the Secretary of State for the State of Mississippi.

The court's findings concerning the asserted ambiguity and applicability of this forum selection clause are stated in the pertinent sections of the following legal analysis.

Of more general significance are the circumstances under which the licensing agreement containing the forum selection clause was negotiated. The licensing agreement was negotiated at arms length between two sophisticated companies. The court finds that the parties negotiated the contract from positions of equal bargaining strength. Furthermore, each was represented by legal counsel. Indeed, Terra was represented by a prominent Wall Street law firm. Although Terra sought over thirty changes to the licensing agreement, it did not seek any changes to the forum selection clause, thereby acquiescing to its terms. The circumstances under which the licensing agreement in general, and the forum selection clause in particular, was negotiated give no hint that the agreement or its terms were the products of fraud, influence, or overweening bargaining power. Thus, the forum selection clause represents a negotiated preference of the parties to litigate covered disputes in federal court in Mississippi. Furthermore, the court finds nothing unreasonable about its terms, requiring litigation in the forum where MCC does business, and where Terra was content to contract obligations, seek further business relationships, conduct business of its own, and even to pursue litigation with other parties. Terra has not argued that the forum selection clause is invalid, as opposed

to "inapplicable" or entitled to "no weight" in the present controversy, nor does the court find that it could do so. The court therefore finds the forum selection clause to be fairly negotiated, valid, and reasonable.

With this brief procedural and factual background in mind the court turns to its effort to succeed where Alexander failed, unraveling rather than slicing through the tangle presented by the pending motions.

## II. LEGAL ANALYSIS

### (including pertinent findings of fact)

The combination of motions here presents the court with often convoluted and intertwined strands of legal analysis. However, the court finds that the most sensible approach under the circumstances is to identify the separate strands and, if possible, determine how they are knotted together. The court may then resolve the issues in this case in a logical fashion.

### A. Intertwining Of The "First–Filed" And "Transfer" Analyses

Invocation of the "first-filed rule" is Terra's principal argument both for permanently enjoining MCC's lawsuit in Mississippi federal court and for denying MCC's motion to transfer this litigation to Mississippi. The court will therefore begin its analysis with a discussion of the purpose of this rule and its applicability in the present litigation. However, as we shall see, the "first-filed" analysis involves factors relevant to MCC's motion to transfer under 28 U.S.C. § 1404(a). Furthermore, MCC has argued that the "first-filed" and "transfer" questions are entirely separable, because, even if the court could properly invoke the first-filed rule to bring all of the litigation to this forum, MCC could still move for a transfer of this litigation to Mississippi pursuant to § 1404(a). Therefore, MCC argues, it should not be prejudiced in the consideration of its transfer motion by the fact that it has already filed the second-filed action in Mississippi. Indeed,

MCC argues that the existence of its action in Mississippi, and the efforts invested by the court there, indicate that there are unusual benefits to transferring this case to Mississippi that might not exist in a case in which the first forum is inconvenient, but no second forum is already entertaining a related case. The second forum, in the circumstances presented here, is prepared to continue litigation of the transferred suit without interruption.

### 1. The "first-filed rule"

The parties have both shown themselves to be aware of this court's examination of the "first-filed rule" in *Brower v. Flint Ink Corp.*, 865 F.Supp. 564 (N.D.Iowa 1994), and have both framed their arguments, at least in part, in light of the principles stated in that decision. However, the present venue problem requires further consideration of those principles and examination of matters not relevant in the *Brower* case. Therefore, although this discussion begins with *Brower*, it certainly doesn't end there.

 As this court observed in *Brower*, 865 F.Supp. at 567, the Eighth Circuit Court of Appeals has recognized the "first-filed rule":

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir.1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990)); [8] *see also Midwest Motor Ex-*

---

8. The first difference between the present case and *Brower* is readily apparent. In *Brower*, this court observed that *Northwest Airlines* was not otherwise on point with that case, because it

examined the power of the court entertaining the first-filed action to enjoin the second-filed action, and that issue was not relevant in the *Brower* case, because there the court was entertaining

press, Inc. v. Central States Southeast and Southwest Areas Pension Fund, 70 F.3d 1014, 1017 (8th Cir.1995) (stating this rule and citing Northwest Airlines); Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys., 57 F.3d 638, 641 (8th Cir.1995) (same); and see generally E.E.O.C. v. University of Pennsylvania, 850 F.2d 969 (3d Cir.1988), aff'd on other grounds, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir.1982); West Gulf Maritime Assoc. v. ILA Deep Sea Local 24, 751 F.2d 721, 730 (5th Cir.1985); Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir.1971); William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969); Brower, 865 F.Supp. at 567. Thus, the "first-filed rule" " 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.' " Midwest Motor Express, 70 F.3d at 1017 (quoting Northwest Airlines, 989 F.2d at 1006). The "first-filed rule" has the benefit of being a

> relatively firm rule that, while providing for the exceptional case, avoids in the main the need for ad hoc balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants—yielding more speedy, less expensive adjudication—and more easily applied by the courts—preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice.

Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund, 677 F.Supp. 220 (S.D.N.Y.1988); see also Brower, 865 F.Supp. at 567 (quoting Berisford Capital). Application of the "first-filed rule" is reviewed by the appellate court for abuse of discretion. Northwest Airlines, 989 F.2d at 1005; Goodyear, 920 F.2d at 489; Minnesota Mining & Mfg. Co. v. Rynne, 661 F.2d 722, 724 (8th Cir.1981) (per curiam).

## 2. Exceptions to the rule

The parties do not dispute that Terra's lawsuit was filed first. What they dispute strenuously is whether filing first should, as Terra argues, suffice to enjoin MCC's Mississippi lawsuit, or whether, as MCC contends, there is an exception to application of the first-filed rule in this case, which would require a denial of Terra's motion for a permanent injunction. The court will therefore turn to consideration of what exceptions may or may not arise in the circumstances of these two lawsuits to preclude application of the first-filed rule.

### a. The "compelling circumstances" exception

■ As the Eighth Circuit Court of Appeals has stated, the first-filed rule is not to be "mechanically" applied, Boatmen's First Nat'l Bank, 57 F.3d at 641; Northwest Airlines, 989 F.2d at 1005; Orthmann, 765 F.2d at 121, but should give way to "compelling circumstances" requiring a result different from that obtained by applying the rule. See, e.g., Midwest Motor Express, 70 F.3d at 1017; Boatmen's First Nat'l Bank, 57 F.3d at 641; Northwest Airlines, 989 F.2d at 1005 ("The rule ... yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation."); Goodyear, 920 F.2d at 488–89; accord Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 629 (7th Cir.1995) ("This circuit does not rigidly adhere to a 'first-to-file' rule," and finding the rule could be overcome by the district court's inherent power to control its docket and a decision to defer to the court of second filing was therefore proper). In Brower, this court attempted to categorize or synthesize from prior decisions what constitutes "compelling circumstances" for disregarding the first-filed rule. Brower, 865 F.Supp. at 568–73. This court found that

> [t]he Eighth Circuit Court of Appeals has ... recognized two specific factual circumstances in which it will find an exception to the "first-filed rule" and allow the second

the second-filed action. Brower, 865 F.Supp. at 567 n. 3. However, in this case, Northwest Airlines is more relevant, because this court is en-

tertaining the first-filed action, Terra's action. Northwest Airlines, 989 F.2d at 1005.

suit to continue: (1) where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first; and (2) where the second-filed action is a continuation of a legal process already begun in that court even though another action concerning the same issues has been filed in between in another court and is therefore ostensibly the first-filed action.

*Brower,* 865 F.Supp. at 569 (citing *Goodyear,* 920 F.2d at 489); *see also Midwest Motor Express,* 70 F.3d at 1017 (finding "insufficiently compelling" allegations where second filer alleged prematurity of first filer's claims and false statements of fact in the first filer's complaint, but failed to produce evidence that the first filer had "promised or indicated in some manner that it would not sue, that [the second filer] relied on this representation, and that [the first filer] then filed a surprise complaint," also citing *Goodyear,* 920 F.2d at 489).

MCC specifically alleges that Terra's "bad faith" in filing this action, despite supposed assurances from Terra's CEO that Terra would not be filing such a suit, falls within the first kind of "compelling circumstance." The court, however, concludes that the evidence of Terra's supposed "bad faith" presented by MCC, as is the "evidence" of Terra's "surprise" at the filing of MCC's lawsuit, is at best equivocal, and that arguments by both parties arising from this equivocal evidence are disingenuous. *Midwest Motor Express,* 70 F.3d at 1017 (failure of proof of filing of first-filed suit contrary to representations of first filer, and contrary to reliance of second filer, means case does not fall within first "compelling circumstances" exception). Thus, the court finds that MCC cannot bring this case within the first "compelling circumstance" exception to the first-filed rule identified in *Brower. See Brower,* 865 F.Supp. at 569; *accord Midwest Motor Express,* 70 F.3d at 1017. The court finds no showing of the second kind of "compelling circumstance" in this case, continuation of a prior action in the second-filed forum so that the intervening lawsuit is only ostensibly the first one filed, *id.,* and, indeed, finds that

none could be made in the circumstances of these lawsuits. MCC's lawsuit is not a continuation of a legal process already begun in Mississippi federal court prior to the filing of Terra's lawsuit in this court. *Id.*

In *Brower,* this court noted consideration by various courts of a number of further circumstances proffered as sufficiently compelling to overcome the first-filed rule. *Brower,* 865 F.Supp. at 569–73. Most of those circumstances fall generally within the so-called "red flags" identified by the Eighth Circuit Court of Appeals in *Northwest Airlines. Northwest Airlines,* 989 F.2d at 1007; *see also Boatmen's First Nat'l Bank,* 57 F.3d at 641 (identifying the *Northwest Airlines* "red flags"). Those "red flags" are:

> first, that the "first" suit was filed after the other party gave notice of its intention to sue; and, second, that the action was for declaratory judgment rather than for damages or equitable relief.

*Boatmen's First Nat'l Bank,* 57 F.3d at 641 (citing *Northwest Airlines,* 989 F.2d at 1007). Neither "red flag" appears here, because MCC does not claim that Terra only filed suit after receiving notice of MCC's intention to file suit, nor is Terra's suit for declaratory judgment rather than for damages or equitable relief. *Id.* Indeed, it is MCC's action, the second-filed action, that is at least in part for declaratory relief on the very issues on which Terra seeks damages in this lawsuit.

Thus, it is appropriate to consider here whether MCC's *second-*filed action "was brought to vex the plaintiff in the *first* suit." *Brower,* 865 F.Supp. at 570 (emphasis in the original) (citing *Berisford Capital,* 677 F.Supp. at 225, as posing this question). The circumstances in this case are similar to those in *Berisford Capital,* in that MCC, the second filer, is critical of the first filer, Terra, for failing to notify MCC of the filing of its suit until just prior to the filing, especially when the filing of Terra's lawsuit was purportedly a "reneging" on a promise from Terra's CEO. *Cf. Berisford Capital,* 677 F.Supp. at 225 & n. 2 (second filer was critical of first filer for not receiving notice of filing of first suit at all until after delay in service by process server, which led second

filer to file its complaint in ignorance of the first-filed suit). This court has rejected MCC's "bad faith" argument, and notes that MCC received some notice of Terra's filing, which was obviously sufficient for MCC to be able to file its complaint the same day. Thus, although the court considers that, at least in litigation of this size and inevitability, it would perhaps have been more courteous for Terra to give MCC more advance notice of the filing of Terra's suit, and that nothing would have been lost thereby, because a preemptive strike by MCC in response to notice of the suit would plainly have raised the "red flags" of *Northwest Airlines,* and would have been little tolerated by this court, MCC still has not shown "compelling circumstances" in this case. The comments of the court in *Berisford Capital* are as appropriate in these circumstances as they were in the case before that court: "I can understand counsel's bruised feelings, but no equitable considerations arise. Counsel for both sides were playing hardball; but neither threw bean balls." *Berisford Capital,* 677 F.Supp. at 225 n. 2. Furthermore, because of the inevitability of the filing of all of the claims presented in the two lawsuits, this court finds that MCC's second-filed action was not intended merely to vex Terra, although there was undoubtedly some jockeying for a preferred forum on MCC's claims in MCC's decision to file those claims in Mississippi federal court. Finally, MCC's motion to transfer is not so groundless as to suggest that filing of MCC's suit in Mississippi was intended only to be vexatious to Terra. Thus, although the court has found little ground so far to deny Terra's invocation of the first-filed rule in support of its motion to enjoin MCC's Mississippi lawsuit, the court also has so far found nothing about the filing of MCC's suit, apart from mere time of filing, that supports barring MCC's suit by application of the first-filed rule.

### b. "Balance of convenience" exception

■ As this court observed in *Brower,* in some cases considering whether or not to allow a second-filed action to proceed, courts have considered an analogy to 28 U.S.C. § 1404(a) to identify factors in a "balance of convenience" to the parties, either before or

in addition to considering other special or compelling circumstances in the "first-filed" analysis. *See Brower,* 865 F.Supp. at 567–68; *see also, e.g., United States v. Costello,* 809 F.Supp. 56, 59 (E.D.Wis.1992) (listing "balance of convenience" factors found in § 1404(a) without identifying that statute as the source, and determining that only the court of the second-filed action could provide complete relief because only it had jurisdiction over all of the parties); *Igloo Prods. Corp. v. The Mounties, Inc.,* 735 F.Supp. 214, 216 (S.D.Tex.1990) (formulating the § 1404(a) test as whether the first-filed plaintiff's choice of venue creates "such oppressiveness and vexation to a defendant as to be all out of proportion to plaintiff's convenience" or "considerations affecting the court's own administrative and legal problems," and citing as using the § 1404(a) analogy *Superior Sav. Ass'n v. Bank of Dallas,* 705 F.Supp. 326, 330–31 (N.D.Tex.1989), and *Merle Norman Cosmetics v. Martin,* 705 F.Supp. 296, 298–301 (E.D.La.1988)); *Berisford Capital,* 677 F.Supp. at 222 (§ 1404(a) "balance of convenience" was flat, therefore court considered other special circumstances, but found where, as in that case, "the circumstances do not clearly call for departure from the first-filed rule, that rule should be applied without apology"). Although the Eighth Circuit Court of Appeals does not appear to have drawn upon this analogy, the inclusion of these further factors is supported by the view of the Eighth Circuit Court of Appeals that the first-filed rule "yields to the interests of justice." *Northwest Airlines,* 989 F.2d at 1006; *Goodyear,* 920 F.2d at 488 (the first-filed rule "is to be applied in a manner best serving the interests of justice"). Therefore, this court cannot read the factors specifically considered by the court in *Northwest Airlines* or other decisions from this circuit's court of appeals to be exhaustive of the circumstances that may be found sufficiently "compelling" to overcome the first-filed rule. After all, the purpose of 28 U.S.C. § 1404(a) is also to prevent injustice to a party forced to litigate in an inconvenient forum. 28 U.S.C. § 1404(a) (statute states that transfer may be made "[f]or the convenience of the parties and witnesses, in the

interest of justice"). Plainly, it would be "unjust," and therefore a "compelling circumstance," if, for example, the "balance of convenience" under 28 U.S.C. § 1404(a) showed an extraordinary burden upon the second filer as the result of litigating in the forum of the first-filed action, or if the transfer analysis under § 1404(a) otherwise dictated transfer. Therefore, this court concludes that in circumstances where a § 1404(a) analysis dictates transfer, the first-filed rule should be abrogated. *Northwest Airlines,* 989 F.2d at 1006 (rule should be abrogated where appropriate "in the interests of justice").

Thus, a *proper consideration of whether* Terra may invoke the "first-filed rule" to obtain an injunction against MCC's Mississippi lawsuit compels this court to consider the factors relevant to MCC's motion to transfer pursuant to 28 U.S.C. § 1404(a) to see if those § 1404(a) factors indicate "compelling circumstances" precluding application of the first-filed rule. Because of this overlapping of the "first-filed" and "transfer" factors and inquiries, the court must now examine the precise impact of the "transfer" analysis upon application of the first-filed rule. It should be remembered that 28 U.S.C. § 1404(a) is the statute under which MCC has brought its own venue motion, its motion to transfer. Also, MCC's motion to transfer this litigation to Mississippi is essentially the "obverse" of Terra's motion, which is based on the first-filed rule, for an injunction against MCC's Mississippi litigation, because such an injunction would likely result in the "transfer" of MCC's Mississippi claims to this district by forcing MCC to refile its Mississippi claims as counterclaims in this litigation.[9] Because the "first-filed" analysis necessarily involves consideration of factors relevant to MCC's transfer motion, the court concludes that it is not the first-filed rule that is dispositive of both motions before the court, as Terra would have it, but

the "transfer" analysis that is potentially dispositive of both motions.

To clarify this conclusion, the possible resolutions must be reviewed in turn. First, Terra's motion for a permanent injunction could be *granted,* but that is only possible if MCC's motion to transfer *fails,* because, as the court concluded above, § 1404(a) grounds for transfer present compelling circumstances creating an exception to the first-filed rule. Second, Terra's motion for a permanent injunction could *fail* on an exception to the first-filed rule not involving § 1404(a) grounds. In that situation, unfavorable disposition of Terra's motion for a permanent injunction would not necessarily require the granting of MCC's motion to transfer. Each lawsuit could proceed unimpeded by the other.[10] Third, any favorable resolution of MCC's motion to transfer would require denial of Terra's motion for a permanent injunction, because, once again, grounds for transfer create exceptions to the first-filed rule, and would consequently require denial of Terra's motion for a permanent injunction. To reiterate, only denial of MCC's transfer motion would permit the granting of Terra's motion for a permanent injunction.

What is neither practically nor theoretically possible, therefore, is a situation in which the first-filed rule could "trump" an analysis pursuant to § 1404(a) that dictated transfer of this action to Mississippi. Terra's arguments notwithstanding, this court has found no authority for the proposition that the first-filed rule would preclude transfer of an action from the forum of first filing where the forum of first filing is found to be inconvenient under § 1404(a). Assuredly, Terra argues that "this action should not be transferred because Terra filed first in the Iowa federal court," but Terra cites no case standing for that proposition. Rather, Terra's argument is pieced together from the following chain of conclusions: (1) absent compel-

---

**9.** The Mississippi federal court has already denied Terra's own § 1404(a) motion to transfer the Mississippi litigation to this district.

**10.** Such a result, while theoretically possible, is unlikely to be the final disposition of the two lawsuits, owing to the closely-related nature of the claims in the two lawsuits, which would

render such bifurcation of the litigation wasteful of resources of the parties and the courts. Such a waste of resources is a ground for transfer under § 1404(a), so that this disposition of the motion for a permanent injunction on non–1404(a) grounds would likely ultimately lead to a transfer on § 1404(a) grounds.

ling circumstances, the first-filed rule should apply; (2) Terra's choice of forum is entitled to great weight, and a transfer shifting the inconvenience from one party to another need not be granted; (3) the few "dead heat" or "no winner" cases cited by MCC as establishing that the first-filed rule does not apply when filings are close together do not find an exception unless the filings are "nearly instantaneous" [sic],[11] because in such circumstances application of the first-filed rule "yields no proper resolution," and only then may recourse be had to an alternative means of resolution, such as consideration of factors other than first filing; and, finally, (4) because this is not a situation involving nearly simultaneous filings, and no other circumstances here are sufficiently compelling, there is no reason to depart from the first-filed rule. Plaintiff [Terra's] Memorandum In Opposition To [MCC's] Motion To Transfer Or Stay (hereinafter, "Terra's Resistance To Transfer"), pp. 3–12.

The weak link in this chain of conclusions, however, is the third one. It is apparent from the discussion above that courts do not consider factors other than who filed first *only* in circumstances in which the first-filed rule cannot be applied because the race to the courthouse was too close to call. Rather, regardless of how close or how distant the racers finished, courts have consistently recognized that the "compelling circumstances" exception to the first-filed rule could erase a victory based solely on the finish results. Indeed, Terra recognizes this proposition in both its first and last conclusions. This court has concluded that among the "compelling circumstances" that suffice to except a case from the first-filed rule are factors under § 1404(a) that dictate transfer of the action, none of which depend upon the time of filing of the suit or suits involved. Thus, application of the first-filed rule cannot "trump" a contrary result under the "transfer" analysis, but is instead dependent upon the "transfer" analysis also favoring retention of the litigation in the first-filed forum.

However, before proceeding to the "transfer" analysis, which is potentially dispositive of both motions before the court, because it may provide a "compelling circumstances" exception to the first-filed rule as well as grounds to transfer this litigation to Mississippi, the court will consider yet another exception to the first-filed rule. This exception was not relevant in *Brower*, but was asserted by MCC in this litigation and has been alluded to above.

#### c. The "dead heat" exception

■ The court must now consider what is perhaps, practically speaking, the anterior question in analysis of Terra's motion for an injunction based upon the first-filed rule. That question is, is Terra entitled to invoke the first-filed rule at all in the circumstances of this case, or does the proximity of the filings in this case create a third exception to application of the first-filed rule? The court has thus far assumed that Terra is entitled to invoke that rule, because it is undisputed that Terra's lawsuit was filed a few hours prior to MCC's filing of its lawsuit in Mississippi. However, MCC asserts that the closeness of the filing times of these two lawsuits makes application of the first-filed rule inappropriate. Terra counters that even if there is a "dead heat" exception to the first-filed rule, it cannot be invoked here. Terra asserts that only filings that are "nearly simultaneous" fall within this exception, and then only because the court is unable to resolve which action was filed first.

Courts have indeed recognized as another exception to the first-filed rule what this court describes as a "dead heat" or "no winner" exception. Furthermore, the time frame within which courts will recognize such a "dead heat" is surprisingly large, as the discussion below will demonstrate. However, the court finds no case in which the "dead heat" exception has stood alone as grounds for overcoming the first-filed rule, unless the finish to the race was really just too close to call.

---

**11.** The court believes the situation Terra is describing is "nearly *simultaneous*" filing of two

lawsuits in different fora.

MCC's principal authority for a "dead heat" exception is *Mobil Oil Exploration Co. v. Federal Energy Reg. Comm'n*, 814 F.2d 998 (5th Cir.1987). MCC reads the case as concluding that filings that are close in time do not require application of the first-filed rule, while Terra reads the case as requiring an exception to the first-filed rule only in very limited circumstances involving "nearly simultaneous" filings, which are so close that the court cannot determine which came first. In *Mobil Oil*, the Fifth Circuit Court of Appeals was confronted with a dispute between two parties seeking review of agency action in circumstances where there was a statutory first-filed rule for determining venue of such review actions. *Mobil Oil*, 814 F.2d at 1000 (finding the first-filed rule in 28 U.S.C. § 2112(a)). One petitioner claimed that it had filed its petition for review in the Fifth Circuit Court of Appeals one second prior to another party's filing in the District of Columbia Circuit Court of Appeals, while that other party asserted that its filing in the Fifth Circuit Court of Appeals had preceded the Commission's filing in that circuit by four-tenths of a second and had been "precisely concurrent" with the Commission's posting in the District of Columbia Circuit Court of Appeals. *Id.* The frustration of the Fifth Circuit Court of Appeals in attempting to determine which petition for review had been filed first was evident:

It should be obvious to even the mechanically inept that if courts let themselves get drug down this slippery slope of splitting minutes on the digital watches worn by parties and timed by calls to the Naval Observatory, the next generation of races will be run by split-second electronic timing devices and laser transmissions or some other esoteric procedures which distort the statutory purpose still further.

*Id.* The court found that the review petitions had been filed "simultaneously or substantially simultaneously," and that in such situations, the first-filed rule could not resolve in which venue the review should be conducted. *Id.* The court therefore concluded that "[w]here the first-filing rule yields no proper resolution and the convenience of the parties in the interests of justice appears evenly balanced, chance is a just

determinant of where the review should proceed." *Id.* at 1001.

Thus, *Mobil Oil* does not stand, as Terra contends, for the proposition that "it is only where the first-filed rule *yields no proper resolution* to the controversy involving infinitesimal time differences in filing that resort may be had to an alternative means of resolution." Terra's Brief In Opposition To Transfer, p. 6 (emphasis in the original; citing *Mobil Oil*, 814 F.2d at 1001). Plainly, the Fifth Circuit Court of Appeals considered "the convenience of the parties in the interests of justice" as an alternative means to the first-filed rule before turning to a game of chance to resolve the venue question. *Mobil Oil*, 814 F.2d at 1001 (noting that both the Fifth Circuit Court of Appeals and the District of Columbia Circuit Court of Appeals had resolved cases of "substantially simultaneous filings" under 28 U.S.C. § 2112(a) by lot). This court, as well as the Eighth Circuit Court of Appeals, also embraces the "interests of justice" as a test for an exception or alternative to the first-filed rule. However, the *Mobil Oil* case also does not stand for the proposition asserted by MCC, which is that any filings that are close in time preclude application of the first-filed rule. Rather, the court in *Mobil Oil* concluded that it had no means to determine which lawsuit had been filed first, and could not make a dispositive determination on the basis of a balance of convenience. *Id.* In answer to both parties' assertions, this court notes, first, that it is able to tell which lawsuit was filed first, Terra's, but it is also able to make a determination of whether the first-filed rule should be followed or disregarded based on an "interests of justice" or "balance of convenience" analysis under 28 U.S.C. § 1404(a). Thus, although *Mobil Oil* does identify a "dead heat" exception, it does not identify an exception applicable in the circumstances presented here.

*Mobil Oil* is not the only "dead heat" case identified either by the parties or the court, however. Two of the most recent federal decisions, two district court decisions located by the court, expand the scope of what can be construed to be a "dead heat" obviating automatic application of the first-filed rule.

In *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144 (S.D.N.Y.1995), the district court for the Southern District of New York concluded that the fact that one party had filed first, and that filing was not an "improper anticipatory filing," did not end the issue of application of the first-filed rule. *Ontel*, 899 F.Supp. at 1153. The court wrote,

> Even though the instant action was not improper, and therefore can potentially benefit from the first-filed rule, *that rule is usually disregarded where the competing suits were filed merely days apart. Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S..908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). *Here, because the lawsuits were both filed on the same day, the first-filed rule is inapplicable.*

*Ontel*, 899 F.Supp. at 1153 (emphasis added). This case does indeed state a "dead heat" exception comparable to MCC's formulation of such an exception.

However, the court in *Ontel* went on to note that even where "a significant difference" between the times of filing of two lawsuits existed, " 'temporal precedence is but a factor to consider and is not controlling.' " *Id.* (quoting *National Patent Dev. Corp. v. American Hosp. Supply Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984)). The court therefore relied instead on " '[e]ssentially the same factors that ... come into play on a motion to transfer under [28 U.S.C. § 1404(a) ]' " to make its determination of the proper venue for the litigation before it. *Id.* (again quoting *National Patent Dev.*). This theme begins to sound familiar.

Similar principles were intoned in another recent decision from the Southern District of New York. In *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128 (S.D.N.Y.1994), the district court again relied upon *National Patent Dev.* when it concluded, " '[T]he courts should be concerned with what the interests of justice require and not with who won the race [to the courthouse].' " *800–Flowers*, 860 F.Supp. at 133 (quoting *National Patent Dev.*, 616 F.Supp. at 118). The court found that it was "well-established that district courts need not slavishly adhere to the first filed rule, and that where circum-

stances dictate, 'great significance should not be placed upon the dates the actions were filed.' " *Id.* (quoting *Ivy–Mar Co. v. Weber–Stephen Prods. Co.*, 1993 WL 535166, * 2 (S.D.N.Y. Dec. 21, 1993)). The court therefore did not resort simply to the first-filed rule to determine which of two lawsuits filed twenty days apart, the first for declaratory judgment, filed in state circuit court, or the second for trademark infringement and unfair competition, filed in the federal court in New York, provided the proper venue for the litigation between the parties. *Id.* Instead, the court "assessed the balancing of conveniences and practical considerations," as those factors are applicable to a motion to transfer under 28 U.S.C. § 1404(a), "and [found] that the interests of justice in this case militate *in favor of adhering* to the first-filed rule." *Id.* (emphasis added). Thus, in *800–Flowers*, although the first-filed rule was applied, it was not because the first-filed suit was filed twenty days before the second filed lawsuit, but because adherence to the first-filed rule comported with the results of a "transfer" analysis under § 1404(a).

The case upon which the *Ontel* court relied, *Factors Etc., Inc.*, telescoped the "dead heat" exception into another form of the "compelling circumstances" exception. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In *Factors Etc., Inc.*, the Second Circuit Court of Appeals was called upon to resolve which forum should entertain the lawsuits of the parties which had been filed a matter of five days apart, the first one in United States District Court for the Northern District of Ohio, for declaratory judgment, and the second in the United States District Court for the Southern District of New York, seeking injunctive relief and damages for misappropriation and unauthorized use of the name and likeness of Elvis Presley. *Id.* at 217. The plaintiff in the Ohio suit moved to transfer the New York suit to Ohio, asserting the first-filed rule as grounds for the transfer. *Id.* The Second Circuit Court of Appeals acknowledged the first-filed rule, but noted that it was inapplicable if there are "special circumstances which justify giving priority to

the second [lawsuit]." *Id.* at 218. The court then found such "special circumstances," in the declaratory and anticipatory nature of the first-filed action, and the filing of two additional lawsuits by the New York plaintiff in the Southern District of New York, upon which it founded its conclusion that the district court had not abused its discretion in allowing the second-filed action to continue in the forum in which it was filed. *Id.* at 219.

Thus, under this line of cases, the timing of the lawsuits is no more than a factor to be considered along with § 1404(a) factors or other "interest of justice" factors, at least where the two lawsuits in question were filed within several days of each other. Certainly, these cases demonstrate that the timing of the lawsuits does not "trump" those other factors, as Terra would advocate. However, this court does not read these cases as allowing a "dead heat" factor to stand alone in creating an exception to the first-filed rule, as MCC would argue, except where the filings were "nearly simultaneous" and it was therefore *impossible* for the court to tell which lawsuit was filed first. *See, e.g., Mobil Oil,* 814 F.2d at 1001. Rather, in each case, including *Mobil Oil,* in which the court disregarded the timing of the filings, the court also carefully considered whether there were "compelling" or "special" circumstances that made application of the first-filed rule inappropriate, *see, e.g., Factors Etc., Inc.,* 579

F.2d at 218–19, or circumstances that dictated a result where the first-filed rule simply could not. *See, e.g., Mobil Oil,* 814 F.2d at 1001.

Although the court concludes that there is no "dead heat" exception which stands alone, except in the circumstances of impossibility of determining who filed first, where the filing of the two lawsuits is, practically speaking, a "dead heat," [12] as in all other circumstances, the final determination of venue will not depend upon the first-filed rule alone, but upon a balance of the dictates of the rule against other factors.[13] What a "dead heat" should do, the court concludes, is counsel the court to avoid a "slavish adherence" to the first-filed rule, *800–Flowers,* 860 F.Supp. at 133, or its "mechanical operation," *Boatmen's First Nat'l Bank,* 57 F.3d at 641; *Northwest Airlines,* 989 F.2d at 1005; *Orthmann,* 765 F.2d at 121, and remind the court to examine other considerations besides temporal priority to see if "compelling circumstances" dictate a departure from the rule. *Northwest Airlines,* 989 F.2d at 1005.

Cases cited by Terra do not contradict this court's conclusion that a "dead heat" exception cannot stand on its own, a conclusion contrary to MCC's assertions, except in the very narrow circumstances identified in *Mobil Oil* in which it is impossible for the court to determine which suit was filed first. Nor do Terra's cases contradict this court's con-

**12.** The court has not been called upon here to determine exactly how large the window for a "dead heat" would be before the first-filed rule would preclude consideration of factors other than temporal priority. However, the court reads all of the cases considered so far to answer that question as presenting *no* point of temporal separation of the filings at which the first-filed suit would always have priority: the determinative issue, which involves consideration of many factors, including temporal priority, is whether there are "compelling circumstances" that, in the "interests of justice," require departure from the first-filed rule. There may be a point, however, where acquiescence in the forum of first filing, apparent from a lengthy failure to pursue litigation in a second forum or failure to move to transfer the first-filed litigation to another forum, would suggest that the first-filed forum is not in fact so inconvenient or unjust as to be a "compelling circumstance" favoring departure from the first-filed rule.

**13.** This conclusion does not eviscerate the first-filed rule, because the rule is still applicable

unless other "compelling circumstances" can be presented requiring a departure from the rule. Thus, the rule is more than a "starting place" for the analysis, but instead states a rebuttable presumption that the first-filed suit should have priority. The court recognizes that what may be lost is some of the benefit of the rule, as stated in *Berisford Capital,* which included the rule's "predictability" and ease of application, precisely because it avoided an *ad hoc* consideration of innumerable factors. *Berisford Capital Corp.,* 677 F.Supp. at 220. However, even the *Berisford Capital* court recognized that the rule should give way in exceptional circumstances. *Id.* Although every second filer may assert that its case involves "exceptional" or "compelling" circumstances that make the rule inapplicable, courts can be trusted to recognize the purely frivolous from the well-grounded assertion of exceptional circumstances, and to invoke the rule when it does present true economies and serves the interest of justice.

clusion that mere temporal priority will not overcome other considerations whenever a determination of temporal priority can be made, a conclusion contrary to Terra's arguments. The additional cases Terra cites as showing that there is no "dead heat" exception, except in the circumstances before the court in *Mobil Oil*, and which Terra argues show that application of the first-filed rule may be based on differences of seconds in the filing of separate lawsuits in separate venues, do involve extremely close temporal proximity, and do apply the first-filed rule to determine venue. Terra points out that the difference in time of filing between the lawsuits in question here is on the order of hours, not seconds. Although this court, too, rejects a "dead heat" exception standing alone in any circumstance other than impossibility of determination of temporal priority, these cases cited by Terra do not stand for the corollary proposition, upon which Terra also relies, that temporal priority on the order of mere seconds or minutes is sufficient to determine venue in the circumstances of this case.

In *Formaldehyde Inst., Inc. v. United States Consumer Prod. Safety Comm'n*, 681 F.2d 255 (5th Cir.1982), another case involving the same statutory first-filed rule as was applied in *Mobil Oil*, 28 U.S.C. § 2112(a), a statutory rule applicable to review of agency determinations, one party won the race to the courthouse by a mere ten seconds. *Formaldehyde Inst.*, 681 F.2d at 261–62. The court relied, in the first instance, on its prior decision in *Southland Mower Co. v. United States Consumer Prod. Safety Comm'n*, 600 F.2d 12 (5th Cir.1979), also cited by Terra here, as holding that the statute had "enacted 'a mechanical, first filing approach' to determining venue in cases such as this," and had therein relied on a one-minute difference. *Formaldehyde Inst.*, 681 F.2d at 261. The court noted prior holdings that " '[w]here one party "succeeds in obtaining an earlier time stamp from the Clerk of one court the agency under review must file there," ' " and applied that rule to priority among two or more parties seeking review of the same agency action in different circuits. *Id.* at 261–62 (again quoting *Southland Mower*, 600 F.2d at 12, in turn quoting *United*

*Steelworkers of Am. v. Marshall*, 592 F.2d 693, 696 (3d Cir.1979)). So far as these cases employing a *statutory* first-filed rule rely upon a "mechanical" approach, however, they are plainly out of step with the common law first-filed rule, which, as recognized in this circuit, is specifically *not* to be "mechanically" applied. *Boatmen's First Nat'l Bank*, 57 F.3d at 641; *Northwest Airlines*, 989 F.2d at 1005; *Orthmann*, 765 F.2d at 121. Furthermore, in *Formaldehyde Inst.*, the Fifth Circuit Court of Appeals went on to conclude that even if it were unable to determine which petition was filed first, it would still determine that venue was proper in that circuit, based on consideration of "transfer" factors under the statute in question, which also provided for transfer "for the convenience of the parties in the interest of justice." *Formaldehyde Inst.*, 681 F.2d at 262 (looking to factors favoring transfer listed in 28 U.S.C. § 2112). Thus, even in the statutory cases, the presumption of venue based on priority of filing could be overcome on grounds similar to those applied by courts applying the common-law rule.

Although this court rejects a "dead heat" exception in any but the narrowest circumstances in which temporal priority cannot be determined, a circumstance not present here, in this case involving application of the common-law first-filed rule, mere priority simply is insufficient ground to retain jurisdiction in this district if "compelling circumstances," such as those considered under § 1404(a), dictate otherwise. Thus, the court returns to the question of whether this case involves a "compelling circumstances" exception to the first-filed rule as the only potentially viable exception presented here. As the court has noted, analysis of the "compelling circumstances" exception in the circumstances of this case encompasses the factors relevant to an analysis of MCC's motion to transfer under 28 U.S.C. § 1404(a). The court therefore turns to consideration of the § 1404(a) factors.

### B. The "Transfer" Analysis

The court has so far unraveled the Gordian knot of this litigation as to conclude that the significance of the "transfer" strand in the

analysis is twofold. First, the "transfer" analysis, required pursuant to MCC's motion to transfer under 28 U.S.C. § 1404(a), will determine whether there are grounds to transfer this litigation to Mississippi federal court, as MCC has requested. Second, in the process of determining whether transfer is appropriate, the court will also determine the proper disposition of Terra's motion for a permanent injunction by determining whether there are "compelling circumstances" for departing from the first-filed rule, which Terra asserts as its ground for enjoining MCC's Mississippi lawsuit. Although resolution of both pending motions now seems to hang by a single thread, the court finds that thread very knotted.

### 1. The "transfer" statute and its purpose

■ The federal transfer statute pursuant to which MCC has brought its venue motion provides as follows:

### § 1404. Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Tenth Circuit Court of Appeals has observed that

> [a]lthough drafted in accordance with the *forum non conveniens* doctrine, the statute was intended to revise rather than merely codify the common law. Courts therefore enjoy greater discretion to transfer a cause pursuant to § 1404(a) than to dismiss the action based upon *forum non conveniens*.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981)); [14] *Howe v. Goldcorp Inv., Ltd.*, 946 F.2d 944, 947 (1st Cir.1991) (also elucidating the relationship between § 1404(a) and the common-law doctrine of *forum non conveniens*), *cert. denied*, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992).[15] The

---

14. In *Chrysler Credit Corp.*, the Tenth Circuit Court of Appeals also explained a number of procedural matters concerning transfers, which, although certainly pertinent should this case be transferred, do not figure in this court's determination of whether or not the case should be transferred:

> An action may be transferred under § 1404(a) at any time during the pendency of the case, even after judgment has been entered. Once transferred, the action retains its procedural identity. The transferee court's powers are coextensive with those of the transferor court; it may issue any order or render any judgment that could have been made in the transferor court had the transfer never taken place. [Thus,] [w]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citations and internal quotation marks omitted). Later in the opinion, the court also observed that "[s]ection 1404(a) only authorizes the transfer of an entire action, not individualized claims. A court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section contemplates a plenary transfer of an entire case." *Id.* at 1518 (citations and internal quotation marks omitted).

15. In *Howe*, the First Circuit Court of Appeals explained the relationship between the statutory

transfer provision and the older, common-law doctrine of *forum non conveniens*, as well as the continuing, but limited viability of the common-law doctrine:

> Before 1948, when Congress enacted 28 U.S.C. § 1404(a) (permitting a "change of venue" between United States district courts for "the convenience of the parties and witnesses"), federal courts invoked the doctrine of *forum non conveniens* to force transfer of a case domestically from one state or district to another. Since 1948, federal courts have relied on § 1404(a)'s *statutory* authority when transferring cases between domestic courts[, for example, by dismissing a case brought in New York where Virginia was more convenient]. They have had to use the non-statutory *forum non conveniens* doctrine only to bring about an *international* transfer of a case (from the United States to a foreign state) where plaintiffs may bring approximately the same action in the foreign forum, but without the unfairness and inconvenience that trying the case in this country would entail.

*Howe*, 946 F.2d at 947–48 (internal citations omitted; emphasis in the original); *see also Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 423 n. 4 (1st Cir.1991) ("28 U.S.C. § 1404(a) . . . permits transfer of cases from one federal district court to another more convenient federal court. While the transfer statute was based on *forum non conveniens* doctrine, the statute gives district courts greater discretion to transfer than they

Eighth Circuit Court of Appeals recently made these observations on the purpose and effect of the statute:

> When section 1404(a) was enacted, it made transfer from an inconvenient venue more available than dismissal had been at common law, and therefore made forum shopping by defendants a more common problem. Permitting the defendant to change the choice of law rules by using section 1404(a) transfer was an unanticipated by-product of a statute that was meant as a "federal judicial housekeeping measure," *Van Dusen [v. Barrack],* 376 U.S. [612,] 636, 84 S.Ct. [805,] 819 [11 L.Ed.2d 945 (1964)], and was not intended to change the balance of power between the parties. *Van Dusen* addressed that problem by developing the "look back" procedure whereby the transferee federal court could simply apply the transferor forum's law. *Id.* at 639, 84 S.Ct. at 820–21.

*Kansas Pub. Emp. Retirement Sys. v. Reimer & Koger Assocs., Inc.,* 61 F.3d 608, 611 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996); *accord Chrysler Credit Corp.,* 928 F.2d at 1515 ("Congress enacted 28 U.S.C. § 1404(a) in 1948 'as a "federal housekeeping measure," allowing easy change of venue within a unified federal system,'" quoting *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265, in turn quoting *Van Dusen v. Barrack,* 376 U.S. 612, 613, 84 S.Ct. 805, 807–08, 11 L.Ed.2d 945 (1964)). The court will be mindful of the potential for forum-shopping by the defendant that this transfer statute may present, and will remember that the statute was not intended to change the balance of power between the parties, but was intended as a federal judicial housekeeping measure. *Id.* The court also reminds the parties of the significance of the *Van Dusen* rule in litigation in which the parties have professed

themselves somewhat uncertain as to what state's law will ultimately apply to what claims.[16]

■ Another principle of transfers under 28 U.S.C. § 1404(a), perhaps related to the principle that the transfer statute was not intended to change the balance of power between the parties, and upon which Terra specifically relies in this case, is one identified in *Brower:* "'In any determination of a motion to transfer under § 1404(a), the plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed, especially where the plaintiff is a resident of the judicial district in which the suit is brought.'" *Brower,* 865 F.Supp. at 568 (quoting *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 927 (W.D.Mo.1985)); *see also Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991) (case involving reversal of dismissal for *forum non conveniens*); *accord Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir.1996) ("'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations,'" quoting *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982)); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) ("'[I]n ruling on defendants' motion [to transfer] the plaintiff's choice of venue should not be lightly disturbed,'" quoting 1A PT. 2 JAMES W. MOORE & BRETT A. RINGLE, FEDERAL PRACTICE ¶ 0.345[5] at 4360 (2d ed. 1995)); *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) ("'Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed,'" quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir.1972)). Again, the court has no intention of "lightly disturbing" Terra's choice of fo-

---

enjoyed to dismiss under the common law *forum non conveniens* doctrine. *Piper Aircraft,* 454 U.S. at 253, 102 S.Ct. at 264. With the enactment of § 1404(a), the common law doctrine of *forum non conveniens* has lost some of its scope; its primary significance today is its application in cases where it is alleged that another country is a more convenient forum. 15 C. Wright and A. Miller, *Federal Practice and Procedure* § 3828 at 279–80 (2d ed. 1986).").

16. In *Myelle v. American Cyanamid Co.,* 57 F.3d 411 (4th Cir.1995), the Fourth Circuit Court of Appeals discussed in some detail the *Van Dusen* rule, noting that the law of the transferor district, which must be applied, includes the transferor district's choice-of-law rules. *Myelle,* 57 F.3d at 413. The court also examined the difference in what law applies depending on whether transfer is effected under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). *Id.*

rum, but will not be bound by an inconvenient forum, even if it was the first forum to obtain jurisdiction of a suit between the parties in some sort of race to the courthouse, if other proper considerations require transfer.

### 2. Factors in the "transfer" analysis

■■ The Supreme Court has stated that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen*, 376 U.S. at 622, 84 S.Ct. at 812). This court must therefore discover what factors are pertinent to this "individualized, case-by-case consideration of convenience and fairness." *Id.* It is plain that the first-filed rule is one factor that can *favor* transfer pursuant to 28 U.S.C. § 1404(a), and may suffice when no contrary "compelling circumstances" are presented, *see, e.g., Midwest Motor Express*, 70 F.3d at 1017, but this merely confirms that the "transfer" analysis involves weighing a number of factors, including who filed suit first when two lawsuits between the parties are proceeding in different fora.

■■ The statute itself states only generally the factors the court is to consider in deciding whether to transfer a lawsuit to a forum different from the one in which it was filed. 28 U.S.C. § 1404(a) (transfer is available "[f]or the convenience of the parties and witnesses, in the interest of justice"). The court must look to case law to develop a better idea of what factors weigh in the "transfer" analysis, and to understand the significance of those factors. In so doing, the court is mindful that "[b]ecause '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature,' *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990), federal law applies [to venue questions] in diversity cases irrespective of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995).

The statute states one factor explicitly concerning what other venues may be considered to receive the transferred case: the statute permits transfer of a civil action only to a district in which the action "might have been brought." 28 U.S.C. § 1404(a); *United States v. Copley*, 25 F.3d 660, 662 (8th Cir. 1994); *accord In re Warrick*, 70 F.3d 736, 739, (2nd Cir.1995) (transferee district must be one in which litigation "might have been brought," citing the statute and *Van Dusen*, 376 U.S. at 619–20, 84 S.Ct. at 810–11); *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 33 (3d Cir.1993) (transferee district was not one in which the action "might have been brought," and therefore the district court lacked authority to transfer the case there under § 1404(a), and a writ of mandamus was issued to correct the error); *Landmark Land Co., Inc. v. Office of Thrift Supervision*, 948 F.2d 910, 913 (5th Cir.1991) (transferee district was not one in which action "might have been brought," and district court therefore erred as a matter of law in ordering transfer, because the bankruptcy court of transferee district could not have entertained the action, which did not directly involve the bankruptcy of the plaintiff bank's subsidiaries); *Chrysler Credit Corp.*, 928 F.2d at 1515 ("§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there.").[17] However, the parties do not appear to dispute that Terra's lawsuit "might have been brought" in the Mississippi district to which MCC requests that this lawsuit be transferred. Thus, this requirement of the trans-

---

17. Thus, § 1404(a) involves two districts, either of which is one in which the litigation "might have been brought," while § 1406, another federal venue statute, is applicable when the first forum is demonstrably improper:

In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Section 1404(a) provides for the transfer of a case where both the original

and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case. Thus, while either statute could theoretically provide a basis for the transfer of a case, only § 1406 can support a *dismissal*.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.1995) (emphasis in the original).

fer statute need not detain the court longer. However, other factors are at issue here. The court will therefore turn first to factors commonly addressed in a transfer analysis, then turn to the unique factor at the center of MCC's arguments for transfer, the existence of a forum selection clause in the licensing agreement between the parties, which, if applicable, selects Mississippi federal court as the proper forum for this litigation.

■■■■ What are the factors commonly considered by courts in a "transfer" analysis? Review of the decisions of the courts of appeals demonstrates that consideration should be made of factors both enumerated in the statute or otherwise determined by courts to be "relevant" to the venue question. *See, e.g., Jumara,* 55 F.3d at 879 (noting that the "enumerated factors" in the statute are "convenience of parties, convenience of witnesses, or interests of justice," but that courts have not limited themselves to consideration of these factors alone, instead considering "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," citing 15 WRIGHT, MILLER & COOPER § 3847). The court will consider these factors in turn here,[18] remembering that, at least in most circumstances, "[t]he burden of establishing the need for transfer still rests with the movant," in this case, MCC. *Id.; Scheidt,* 956 F.2d at 965 (10th Cir.1992) ("party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient"); *Chrysler Credit Corp.,* 928 F.2d at 1515–16 (same).

### a. "Balance of convenience"

■■■■ The statute expressly, if not very specifically, identifies one touchstone of the transfer analysis as the "convenience" of the parties and witnesses. 28 U.S.C. § 1404(a); *see also Stewart,* 487 U.S. at 29, 108 S.Ct. at 2243–44 (statute requires "individualized, case-by-case consideration of convenience"). As this court observed in *Brower,* a transfer shifting the inconvenience from one party to another need not be granted. *Brower,* 865 F.Supp. at 568 (citing *Houk,* 613 F.Supp. at 927); *accord Robinson,* 74 F.3d at 260 (district court did not err in refusing to transfer case where it found transferring case "would merely shift inconvenience from" one party to the other). Terra contends that allowing MCC to transfer this action to Mississippi would merely shift the burden of litigating in a "foreign" forum from MCC to Terra; therefore, Terra urges the court to reach the same conclusion it did in *Brower,* that the "balance of convenience" is "flat" and presents no grounds either for transfer or to overcome the first-filed rule, which would require denial of MCC's transfer motion and an injunction on the Mississippi litigation. *Brower,* 865 F.Supp. at 568 ("balance of convenience" was "flat," and first-filed rule was therefore applied).

In *In re Warrick,* the Second Circuit Court of Appeals affirmed that § 1404(a) requires the district court to consider "the convenience of the parties and witnesses," and the district court's failure to consider this "statutorily mandated consideration," in favor of consideration of other factors, such as "judicial economy," had led the district court to the wrong result. *In re Warrick,* 70 F.3d at 740–41. The appellate court concluded, first, that the plaintiff's choice of forum "was entitled to substantial consideration," although perhaps less so in a class action lawsuit than in an individual action, and that the district court's decision to transfer to another forum was improper where the present district "would facilitate the parties' access to the

---

**18.** The court does not mean to suggest that the factors, whether "enumerated" or the products of judicial interpretation, necessarily fall into distinct groups. Indeed, the discussion to follow will likely demonstrate that there is considerable overlap among the identified groups of factors, as different courts perceive consideration of specific factors to derive from different "enumerated" factors. However, because of the plethora of factors courts have considered in making a

"transfer" analysis, some "signposts" are useful as the court steers through the analytical factors and the factual circumstances of this case. The polestar of the inquiry, as the Supreme Court indicated in *Stewart* is an "individualized, case-by-case consideration of convenience and fairness," and all of the factors considered below relate to this inquiry. *Stewart,* 487 U.S. at 29, 108 S.Ct. at 2243–44.

testimony of [key witnesses], as well as to the documents that comprise and illuminate the [ERISA] Plan [in question] itself." *Id.* at 741; *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1291 (5th Cir.1994) ("Federal courts have long recognized that two of the factors supporting a change in venue are convenience of the witnesses and the location of records and documents."). Thus, part of the "balance of convenience" looks at comparative accessibility to witnesses and documents or other evidence.

A more complete picture of the factors involved in a "balance of convenience" is provided by two decisions from the Tenth Circuit Court of Appeals. *See Scheidt,* 956 F.2d at 965–66; *Chrysler Credit Corp.,* 928 F.2d at 1516. In *Scheidt,* the appellate court concurred with the defendant's assertion of the following factors as relevant to determining whether transfer is appropriate: (1) location of the majority of witnesses; (2) location of pertinent documentary evidence; (3) place in which conduct complained of occurred; (4) which forum's substantive law was applicable to the conduct complained of; and (5) whether the balance of all of these factors meant that the proposed transferee district was the less expensive and more convenient forum for the litigation. *Scheidt,* 956 F.2d at 965 (citing *Chrysler Credit Corp.,* 928 F.2d at 1516, as stating the factors pertinent to a determination of a § 1404(a) transfer motion); *Chrysler Credit Corp.,* 928 F.2d at 1516 (listing some of these among other factors). The *Scheidt* court then examined particularly the "convenience of witnesses" factor, concluding that " 'it is necessary that some factual information relative to the materiality of witness testimony and [other] considerations ... be supplied to the [trial court].' " *Scheidt,* 956 F.2d at 966 (quoting *ROC, Inc. v. Progress Drillers, Inc.,* 481 F.Supp. 147, 152 (W.D.Okla.1979)). The considerations of witness convenience noted by the court included more than the number of witnesses who might be inconvenienced by one forum or the other; instead, it also involved the "quality and materiality of the testimony of said witnesses," whether such witnesses were "unwilling" to appear in one forum or the other, whether deposition testimony would be unsatisfactory, and whether

the use of compulsory process would be necessary or possible. *Id.; see also Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1138–39 (6th Cir.1991) (considering a transfer motion in which a forum selection clause figured, and finding, "There is no reason why the testimony of witnesses could not be presented by deposition."), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). The court in *Scheidt* held that where the defendant's showing on these matters was "meager," it failed to demonstrate the requisite inconvenience of defendant's witnesses. *Id.* Applying similar requirements for showing inconvenience, the court concluded that conclusory statements concerning the volume and materiality of documentary evidence were "clearly deficient," at least in part because the defendant failed to demonstrate why the evidence could not be sorted in one forum and only the probative evidence moved, at little cost, to the forum entertaining the case. *Id.* Furthermore, even assuming that the law of the proposed transferee forum would apply, the court held that this was not a significant concern in light of the "relative simplicity" of the legal issues involved in the common law fraud and breach of contract claims. *Id.* The court therefore concluded that there was at most "merely [a] shifting [of] the inconvenience from one side to the other," which "obviously is not a permissible justification for a change of venue." *Id.* The court therefore held that the district court had not abused its discretion in denying the transfer motion. *Id.*

Although it did not elaborate on the meaning of any particular factors in the same way it had in *Scheidt,* in *Chrysler Credit Corp.,* the Tenth Circuit Court of Appeals identified a number of factors that are relevant to the "balance of convenience" and "interest of justice," as well as to "other relevant factors." *Chrysler Credit Corp.,* 928 F.2d at 1516. Those factors identified by the Tenth Circuit Court of Appeals that this court deems to relate most closely to the "balance of convenience" factor enumerated in the statute include the following: " 'the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; ... difficulties

that may arise from congested dockets; ... [and] all other considerations of a practical nature that make a trial easy, expeditious and economical.'" *Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967)).

Weighing this "statutorily mandated consideration" first in this case, *In re Warrick,* 70 F.3d at 740–41, this court, like the Mississippi court, *see* Mississippi Order of January 31, 1996, p. 7, concludes that there is little doubt that the parties will be able to produce any witnesses who are employees or officers of either company in any forum in which this case is litigated, even apart from any consideration of whether the forum selection clause is indicative of the convenience of the parties. While there is assuredly inconvenience to either party in litigating in the other party's preferred forum, simply because the party based outside of the forum will have to produce its witnesses who are employees or officers in a distant forum, as well as face the logistical problems of litigating "away from home," *Chrysler Credit Corp.,* 928 F.2d at 1516 (such factors may fall within "other considerations of a practical nature that make a trial easy, expeditious and economical"), the court has been presented with no compelling evidence that litigating in Mississippi will be more inconvenient to Terra as a party than litigating in Iowa will be to MCC. Indeed, Terra conducts business operations at facilities in Mississippi and has availed itself of the Mississippi courts on a number of occasions, but MCC does not routinely conduct operations in this state on a comparable scale. Therefore, although Terra asserts that it has a larger number of party witnesses who will be inconvenienced by the Mississippi forum, the court finds that Mississippi is neither an unfamiliar nor unduly burdensome forum for Terra, and the court therefore cannot find that the balance of convenience of the parties weighs decisively in favor of one forum or the other.

■ Thus, the question of convenience devolves to consideration only of convenience of non-party witnesses. Both parties have

made a concerted effort to provide "some factual information relative to the materiality of witness testimony and [other] considerations," so that the court is not required to rule on the convenience of witnesses and parties on the basis of merely conclusory statements or similarly "meager" evidence. *Scheidt,* 956 F.2d at 966. However, the court is not convinced that all of the witnesses purportedly required by the parties are of equivalent materiality.[19] Thus, although Iowa may well be the *location* of the *majority* of the witnesses, sheer numbers of witnesses will not decide which way the convenience factor tips. *Id.*

■ The question of witness convenience, properly viewed, is whether the forum to which transfer is sought is so inconvenient as to inhibit the access of one party or the other to necessary witnesses. *See, e.g., In re Warrick,* 70 F.3d at 741 (question is which forum "would facilitate the parties' access to the testimony of [key witnesses]"). Furthermore, this question of the accessibility of witnesses depends upon whether those witnesses will willingly appear, whether they can be compelled to appear, and whether alternative means of producing their testimony exist. *Id.* (question of witness convenience included whether witnesses would be "unwilling" to attend in the chosen forum); *Moses,* 929 F.2d at 1138–39 (considering whether witnesses made unavailable by the forum chosen "could not be presented by deposition"); *Chrysler Credit Corp.,* 928 F.2d at 1516 (the question of witness convenience is one of "'the accessibility of witnesses ..., including the availability of compulsory process to insure attendance of witnesses'"). Admittedly, non-party Iowa witnesses may be unwilling to travel to trial in Mississippi, and a forum in Mississippi may not be able to compel the appearance of non-party Iowa witnesses *for trial, Chrysler Credit Corp.,* 928 F.2d at 1516 (one criterion is availability of compulsory process for witnesses), but there is no showing that those witnesses, or any other essential witnesses, cannot be compelled to appear for discovery, in a proper

---

19. Specifically, the court is not at all convinced of the materiality of several witnesses, whom Terra has belatedly asserted are so important, who operate other MCC technology in the state of Iowa.

place, pursuant to the wide reach of discovery under the Federal Rules of Civil Procedure, nor is there any convincing showing that the testimony of any necessary witness cannot be adequately presented by deposition, either read into the record from a transcript, or in the form of a videotaped deposition played for a jury. *Scheidt,* 956 F.2d at 966; *Moses,* 929 F.2d at 1138–39.[20] The court finds that the balance of convenience of witnesses is therefore "flat."

Terra also places great emphasis on the volume of documentary and physical evidence in Iowa. The location of pertinent documentary evidence was an element of the analysis recognized by the courts in *In re Warrick,* 70 F.3d at 741 (which forum "would facilitate the parties' access . . . to the documents that comprise and illuminate" the dispute between the parties), and *Scheidt,* 956 F.2d at 965 (which forum is the location of documentary evidence), and the same relevancy extends to the location of other physical evidence. Yet, the court is not convinced that the balance produced by this factor is as clearly in favor of the Iowa forum as Terra asserts. Terra contends that a jury must view the recovered evidence in the "grid" system laid out in its warehouse to understand the arguments concerning the cause of the explosion. However, it will certainly not be necessary for the jury to view each and every piece of evidence recovered from the explosion site. Rather, videotaping or graphic representation of this grid system presents a ready alternative, coupled with transport of only the key pieces of evidence in question. This procedure is comparable to the procedure found adequate for documentary evidence in *Scheidt,* and this procedure answers both Terra's arguments concerning documentary and physical evidence. *Scheidt,* 956 F.2d at 966 (defendant failed to demonstrate why the evidence

could not be sorted in one forum and only the probative evidence moved, at little cost, to the forum entertaining the case). Furthermore, because the principal issue in Terra's claim is the adequacy of MCC's design of the neutralizer technology, and the majority of that documentary evidence is in Mississippi, the court finds a balance of convenience based on relative accessibility of documentary and physical evidence, as well as other sources of proof, also is "flat."

The court recognizes that two of the convenience factors consider in *Scheidt,* the place in which the conduct complained of occurred, and which forum's substantive law is applicable to the conduct complained of, do point to Iowa as the proper venue. *Scheidt,* 956 F.2d at 966. Indeed, the court recognizes that a ruling transferring this litigation, arising from a catastrophic explosion in Iowa, would come as a surprise to persons not aware of the multitude of factors that go into a proper analysis of a motion to transfer a case pursuant to 28 U.S.C. § 1404(a). However, the court finds that place of occurrence alone has little to do with actual convenience of the parties conducting litigation as the result of an event when there is no especial evidentiary significance to the location of the catastrophe and proof of liability.[21] Furthermore, the place in which the conduct complained of occurred is only partly Iowa. The conduct on which Terra bases its claims actually took place to a very large extent in Mississippi, because it is there that MCC designed the neutralizer technology at issue here, and from there that training, warnings, and instructions would have come. Even conceding that Iowa law might apply to Terra's tort claims, an issue on which this court does not here need to pass, the court has little doubt that a federal court in Mississippi could apply Iowa law as competently as this court has

---

20. The fact that a party may have to make choices about which witnesses to present "live" at a trial in a distant forum, and which to present by deposition, does not, in this court's view, amount to undue inconvenience. Indeed, there might be salutary benefits of such logistical difficulties in paring an unwieldy list of witnesses, used to impress the court with the potential inconvenience of a proposed forum, to those necessary to prove the party's case, once the forum is decided.

21. For example, merely because some forum is the place of an automobile collision between parties from widely separated states does not, by any stretch of the imagination, make it a forum convenient for any party, even if it that is where any negligent conduct on the part of one driver or the other occurred.

from time to time applied the law of other states. Thus, the balance of all of these factors does mean that neither the proposed transferee district nor this forum is necessarily the less expensive and more convenient forum for the litigation. *Scheidt,* 956 F.2d at 966.

Because it is MCC's motion to transfer, and MCC therefore has the burden in the consideration of these elements of proving that transfer is appropriate, in viewing the balance of convenience most favorably to Terra to see if MCC has met its burden, the court can find no more than a marginal shift in the balance of convenience towards the Iowa forum, but no decisive shift towards Mississippi. Because disposition of a motion to transfer should not merely shift the inconvenience from one party to the other, the court cannot conclude that MCC has thus far met its burden of proving that transfer is appropriate. *Brower,* 865 F.Supp. at 568 (citing *Houk,* 613 F.Supp. at 927); *accord Robinson,* 74 F.3d at 260 (district court did not err in refusing to transfer case where it found transferring case "would merely shift inconvenience from" one party to the other); *Scheidt,* 956 F.2d at 966 ("merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue."). The court must therefore consider other factors in the § 1404(a) analysis to see if they favor MCC's motion.

#### b. The "interest of justice"

The statute provides that transfer may be made "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts have generally treated the "interest of justice" as a separate factor they must consider, *see, e.g., Stewart,* 487 U.S. at 29–30, 108 S.Ct. at 2243–44 (transfer under the statute requires "individualized, case-by-case consideration of convenience and fairness," and "[t]he district court . . . must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"); *In re Warrick,* 70 F.3d at 740 (considering "interest of justice" as a factor separate from "convenience"); *Jumara,* 55 F.3d at 879 (finding the "enumerated factors" under § 1404(a) are "convenience of parties, convenience of witnesses, or interests of justice"),[22] but by what criteria the "interest of justice" is to be evaluated, if it is separable from the balance of convenience, is less clear.

In *In re Warrick,* the Second Circuit Court of Appeals found that the district judge had improperly transferred the case on the basis of its citation of the "interest of justice" clause and a conclusion that transfer would "serve 'judicial economy.'" *In re Warrick,* 70 F.3d at 740. The appellate court apparently accepted that the "interest of justice," in the form of "judicial economy," is a relevant factor in the transfer analysis, but observed that "judicial economy" is not necessarily sufficient alone to serve as the ground for a transfer. *Id.* (citing, *inter alia, In re Scott,* 709 F.2d 717, 721 (D.C.Cir.1983) (per curiam), which held that "inconvenience to the court is a relevant factor but, standing alone, it should not carry the day"). The court noted that, because a related action in the transferee district had already come to judgment and appeals had been exhausted, the transfer did not actually result in a consolidation of multiple actions in one district. *Id.* (citing *Factors Etc., Inc.,* 579 F.2d at 219, as an example of proper consideration of the possibility of consolidation where several actions arising from the same transaction were still pending in the district asserted as the proper venue).

Looking again to the decision of the Tenth Circuit Court of Appeals in *Chrysler Credit Corp.,* this court finds a number of factors identified there that this court believes relate most closely to this "interest of justice" enu-

---

**22.** This court would be inclined to read the "interest of justice" clause as stating the reason "convenience" matters enough to supply a ground for transfer. However, in the statute, there is neither a conjunctive "and" between the two clauses, which might suggest their relatedness, nor a disjunctive "or," suggesting instead that the two clauses state separate grounds for transfer. Thus, the court bows, in this case, to the extensive body of precedent and commentary suggesting that the two clauses state separate, sufficient grounds for transfer, although, clearly, they may also be related.

merated factor, and less directly to the "convenience" of the parties and witnesses: " 'the plaintiff's choice of forum; ... the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; ... the possibility of the existence of questions arising in the area of conflict of laws; [and] the advantage of having a local court determine questions of local law....'" *Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co.*, 371 F.2d at 147). At least to this court's way of thinking, each of these factors relates more to the question of whether the process and results of a trial in one or the other forum will be more "fair," than each does to the question of whether the parties are inconvenienced by one forum or the other. Nonetheless, the point is that a proper case-by-case analysis must be made, not how the court categorizes the factors in that case-by-case analysis. *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2243–44 (transfer analysis involves case-by-case consideration of convenience and fairness). Thus, the court will here consider these factors in addition to those considered above under the heading of "convenience."

Again, the court concludes that there is no decisive tip in the balance towards either Iowa or Mississippi as the proper forum for this litigation. The court does not find that "judicial economy" will necessarily be served better by transferring this litigation to Mississippi or by enjoining the Mississippi litigation, *In re Warrick*, 70 F.3d at 740, nor is it persuaded that either this court or the Mississippi court has already invested so much effort into the respective cases that to deprive one court or the other of its case would be a "waste" of judicial resources. The court simply does not view the necessary disposition of the venue and discovery motions in the two fora so far undertaken as "wasted," no matter where these cases are ultimately litigated. Neither court has developed an overwhelming familiarity or expertise in the issues presented that the other court cannot benefit from by perusing the relevant rulings.

What is abundantly clear, however, is that these two lawsuits should properly be consolidated for the sake of both judicial economy and consistency, and economies to the parties of pursuing all litigation in a single forum. *Id.* (proper consideration of the benefits of consolidation arises when litigation in both fora is "live"). In light of the ruling of the Mississippi court denying Terra's motion to transfer the Mississippi litigation to Iowa, half of the litigation between the parties is not going to occur here, unless this court enjoins the Mississippi litigation and MCC brings all of its present claims as counterclaims in this lawsuit. MCC points out that because there is an existing lawsuit underway in its preferred forum, this lawsuit could be transferred to Mississippi without interruption, but the court does not find that there would be any real interruption in the disposition of MCC's claims if prosecution of the Mississippi litigation is enjoined, because of the continuance of interrelated discovery in this forum and the existence of this forum as a ready place for the refiling of MCC's claims as counterclaims. Thus, although the court finds that judicial economy, and economy of the parties, both interests of justice, would be served by consolidation of these lawsuits in a single forum, the court cannot find on consideration of these factors that MCC has met its burden to show that transfer is the proper method to effect those economies.

The court therefore turns to the factors suggested by the decision in *Chrysler Credit Corp.*: " 'the plaintiff's choice of forum; ... the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; ... the possibility of the existence of questions arising in the area of conflict of laws; [and] the advantage of having a local court determine questions of local law....'" *Chrysler Credit Corp.*, 928 F.2d at 1516. Unfortunately, these factors are not determinative of the proper forum either. Although Terra's current preference as to forum is apparent from the filing of its lawsuit here, it has previously agreed to Mississippi as a proper forum if the forum selection clause in the licensing agreement between the parties is applicable to Terra's

claims. The court will consider this issue more fully below. As to " 'the cost of making the necessary proof,' " *id.*, the court concluded above that the balance of convenience for parties and witnesses was essentially "flat," and that conclusion necessarily encompassed the comparative costs to the parties of litigating in one forum or the other. The court sees no difficulty in either party enforcing a favorable judgment on its claims in either federal forum, *id.*, and thus does not find this factor decisive. Nor does the court find any relative advantages or obstacles to a fair trial for either party in either forum.[23] *Id.* Although the court has noted some uncertainty on the part of the parties as to what law applies to what claims, Terra steadfastly asserts that Iowa law applies to its tort claims, and therefore this forum is the better one. *Id.* (recognizing as a interest of justice "the possibility of the existence of questions arising in the area of conflict of laws; [and] the advantage of having a local court determine questions of local law ...."). However, as the court observed above, the court is not convinced that the Mississippi federal court would less competently address claims founded on Iowa law than this court would address claims or counterclaims founded on Mississippi law. Therefore, the court finds none of these factors decisive, and because none is decisive, must conclude that MCC still has not met its burden to show that transfer is appropriate.

### c. Other "relevant factors"

Although not enumerated in the transfer statute in question here, courts have also considered other "relevant factors" that are "many variants of the private and public interests protected by the language of § 1404(a)." *Jumara,* 55 F.3d at 879. Thus, these factors are somewhat different from, but necessarily closely related to, the "balance of convenience" or "interest of justice" factors.

In *Jumara,* the Third Circuit Court of Appeals elaborated on these private and public interests:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara,* 55 F.3d at 878–80 (citations omitted); *and compare Chrysler Credit Corp.* (which appears to identify most of these factors as relating to the *Stewart* Court's emphasis on "convenience and fairness"). Here, the overlap among the enumerated and unenumerated factors is readily apparent, because the court finds that it has considered each of these private and public interests, even if not in so many words, in its discussion of the "balance of convenience" and the "interest of justice." The court must therefore consider what unique "other relevant factors" may be presented in this case.

Among the private and public interests it had listed, the court in *Jumara* singled out for further consideration the presence of a

---

**23.** The court is equally unpersuaded by the argument that MCC can't get a fair trial in this forum, because of the awareness of residents, hence potential jurors, of the explosion, because the district is sufficiently large that not every potential juror will have a first-hand awareness of anything to do with the explosion exceeding what Mississippi residents will know about the explosion, which received national news coverage. By the same token, Terra has facilities in Mississippi, so that it is no "stranger" in the forum, and has chosen to litigate in the forum before with some frequency, undercutting any suggestion that Terra would be prejudiced by a Mississippi forum for its claims.

forum selection clause in a contract between the parties:

Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Hence, within the framework of § 1404, Congress "encompasse[d] consideration of the parties' private expression of their venue preferences." *Stewart,* 487 U.S. at 29–30, 108 S.Ct. at 2244 [ (1988) ].

*Jumara,* 55 F.3d at 880; *Brock,* 933 F.2d at 1257–58 (quoting other portions of *Stewart,* 487 U.S. at 30–31, 108 S.Ct. at 2244–45, which suggest that the importance of a venue selection clause is its relationship to the balance of convenience). The proper consideration of the forum selection clause in this case is a complex matter, which is developed in the following sections of this ruling. Indeed, because the court concludes that all of the factors considered so far demonstrate that the balance of convenience is "flat" and neither the interest of justice nor other relevant factors so far considered provide a clear resolution of which forum is more appropriate, unless the forum selection clause is dispositive of MCC's transfer motion, the court is confronted with a case in which transfer would merely shift the inconvenience from one party to another, and therefore, absent other considerations, this litigation should probably remain in the forum in which it was first filed. *See, e.g., Brower,* 865 F.Supp. at 568 ("balance of convenience" was "flat," and first-filed rule was therefore applied); *accord Robinson,* 74 F.3d at 260 (district court did not err in refusing to transfer case where it found transferring case "would merely shift inconvenience from" one party to the other).

### 3. Forum selection clauses

The court has so far untangled the knots in the remaining strand of its analysis, the transfer strand, as to be left with only one: whether the forum selection clause is determinative of the pending motions. However, that knot is indeed a complicated one, involving several loops and hitches. As the court observed above, forum selection clauses are considered by courts to be relevant to a "transfer" analysis, as a "manifestation of the parties' preference" as to the forum for actions between them, or otherwise reflecting

the convenience of the parties or interests of justice. *Stewart,* 487 U.S. at 29–30, 108 S.Ct. at 2243–44 (testing a forum selection clause against other § 1404(a) factors to see how it compares with the convenience of the parties and the fairness of litigating in the chosen forum, at least in part in terms of the fairness of enforcing the forum selection clause in light of the relative bargaining power of the parties); *Jumara,* 55 F.3d at 880 (citing *Stewart,* 487 U.S. at 29–30, 108 S.Ct. at 2243–44 and considering a forum selection clause in light of the convenience of the parties and the interest of justice in enforcing a stated preference); *Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257–58 (4th Cir. 1991) (citing *Stewart,* 487 U.S. at 30–31, 108 S.Ct. at 2244–45). Plainly, whatever the basis for consideration of a forum selection clause in a "transfer" analysis, the existence of such a clause is of some significance in that analysis. Because of the particular stress MCC places on the forum selection clause as determinative of the proper forum for this litigation, and Terra's challenge to the applicability of the forum selection clause at all, the court must now turn to further consideration to the knotty problems of the significance and meaning of the forum selection clause in this case.

### a. The weight to be given the clause in a "transfer" analysis

■ When the court is confronted with one party's assertion of a forum selection clause as relevant to or determinative of the outcome of the court's transfer analysis, the first question raised by the presence of such a clause is, how much weight should the clause be given in determining whether or not to transfer the lawsuit to the forum identified in the clause? Courts generally agree that the forum selection clause "should not receive dispositive weight." *Stewart,* 487 U.S. at 31, 108 S.Ct. at 2245; *Jumara,* 55 F.3d at 880; *Brock,* 933 F.2d at 1257–58; *Moses,* 929 F.2d at 1136. However, courts also agree that the contractual choice of forum is a "significant" or "substantial" factor. *Stewart,* 487 U.S. at 30–31, 108 S.Ct. at 2244–45; *Jumara,* 55 F.3d at 880; *Brock,* 933 F.2d at 1257–58 (quoting *Stewart,* 487 U.S. at 30–

31, 108 S.Ct. at 2244–45 as stating forum selection clause is a "significant factor that figures centrally in the district court's calculus"); *Moses*, 929 F.2d at 1136; *Sunshine Beauty Supplies, Inc. v. U.S. Dist. Ct.*, 872 F.2d 310, 311 (9th Cir.1989) (district court erred by failing to consider the forum selection clause at all in transfer analysis). An examination of judicial decisions, beginning with the Supreme Court's decision in *Stewart*, will clarify when a forum selection clause matters and just how significantly.

 *i.* **Stewart and its progeny.** In *Stewart*, the Supreme Court stated that "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus" under § 1404(a). *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244; *Brock*, 933 F.2d at 1257 ("In *Stewart*, the Supreme Court addressed the issue of how a motion for transfer under § 1404 interplays with a contractual forum-selection clause."). Therefore, in *Stewart*, the Supreme Court directed the district court to engage in a case-specific balancing of the forum selection clause against other factors under § 1404(a) to determine whether to give the clause effect by transferring the litigation to the forum specified in the clause:

In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

*Stewart*, 487 U.S. at 29–30, 108 S.Ct. at 2244. Thus, the Supreme Court concluded,

The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as [state] law [disfavoring forum selection clauses] might have it), but rather the consideration for which Congress provided in § 1404(a).

*Id.* at 31, 108 S.Ct. at 2245. The Court held that "federal law, specifically 28 U.S.C. § 1404(a)," rather than state law, in the form of Alabama's public policy disfavoring forum selection clauses, "governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court" selected according to that clause. *Id.* at 32, 108 S.Ct. at 2245.[24]

24. MCC has often pointed to the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), an admiralty case in which the Supreme Court upheld the validity of forum-selection clauses between parties of equal bargaining power, as stating standards applicable here. Terra has generally argued that any reliance on *The Bremen* is misplaced. The court agrees generally with Terra's position, in light of *Stewart*'s conclusion that the Court of Appeals below had erred by applying the standards announced in *The Bremen*, although the Supreme Court acknowledged that the case might be "instructive," because the inquiry in a transfer case was not "whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*," but is instead "whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case" to a forum indicated in the forum selection clause, to which the Court answered in the affirmative. *Stewart*, 487 U.S. at 28–29, 108 S.Ct. at 2243–44. Thus, the determinative standards are those stated in § 1404(a) and *Stewart*, not those stated in *The Bremen*. *See Royal Bed & Spring Co., Inc. v. Famossul Indust-*

*ria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir.1990) (in *Stewart*, "the Supreme Court noted that, rather than to have relied on the principles set forth in *The Bremen* case, the court of appeals should have decided whether section 1404(a) itself controlled Ricoh's request to give effect to the parties' contractual choice of venue which provided for a transfer of the case to a Manhattan court [and] [t]he Supreme Court added: 'we hold that it does.' [*Stewart*, 487 U.S. at 29, 108 S.Ct.] at 2243."); *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 966–67 (2d Cir.1988) ("The Supreme Court has since decided *Stewart* . . . in which it concluded that, outside the admiralty realm, § 1404(a) transfer motions are not governed by the standard articulated in *Bremen* but by the terms of § 1404(a) itself," and "Since we believe the district court did not abuse its discretion in refusing to transfer [despite a forum selection clause, which would have indicated transfer] even under the relatively strict confines of *Bremen*, its decision was *a fortiori*, not an abuse of discretion under [the intervening decision in] *Stewart* and was clearly 'authorized by law' under § 1404(a)."); *Shaw Group, Inc. v. Natkin & Co.*, 907 F.Supp. 201, 203–04 (M.D.La.

The *Stewart* decision has two immediate effects for this court's further analysis. First, it demonstrates that whether or not to enforce the forum selection clause is a question of *federal* law, and specifically, a question to be determined according to § 1404(a) standards. *See, e.g., Jumara,* 55 F.3d at 878 (*Stewart* held that federal law determined propriety of venue, not contractual interpretation of forum selection clause under state law); *Brock,* 933 F.2d at 1257 (in *Stewart,* "the Supreme Court concluded that *federal law, not state law,* resolved the issue of whether a court should transfer a case," with emphasis in the original). Second, it demonstrates that Terra's rather wan assertion that Iowa law disfavors forum selection clauses is entirely unimportant. *See Stewart,* 487 U.S. at 31, 108 S.Ct. at 2244–45 (specifically rejecting state policy with regard to forum selection clauses as of any moment in a transfer analysis); *Brock,* 933 F.2d at 1257 (*Stewart's* application of federal law was "[d]espite the fact that Alabama law disfavored forum-selection clauses," and therefore the argument that the case should be re-transferred to Texas, contrary to a forum selection clause selecting Virginia, because the forum selection clause would be void under Texas state law, was an improper focus). The further implications of *Stewart* and its progeny will be considered below.

The most recent decision of any court of appeals to consider *Stewart* and the impact of a forum selection clause in a transfer analysis is the decision of the Third Circuit Court of Appeals in *Jumara. Jumara,* 55 F.3d at 877–83. In *Jumara,* the court cited *Stewart* for the proposition that a forum selection clause should not receive dispositive weight in a transfer analysis, but is entitled to substantial consideration as an expression of the parties' agreement as to the proper forum. *Id.* at 880. The court recognized that the plaintiff's choice of forum, ordinarily the subject of considerable deference, as Terra asserts, is not properly given deference "where the plaintiff has already freely contractually chosen an appropriate forum." *Id.* Thus, "[w]here the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' *see The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914–15, 32 L.Ed.2d 513 (1972), the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Jumara,* 55 F.3d at 880; *Huntingdon Eng'g & Environmental Inc. v. Platinum Software Corp.,* 882 F.Supp. 54, 57–58 (W.D.N.Y.1995) (although the party moving for transfer generally bears the burden of showing that the forum should be changed, the burden shifts to the plaintiff when there is a forum selection clause supporting transfer to "demonstrate exceptional facts explaining why he should be relieved from his contractual duty," citing *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1278 (S.D.N.Y.1992)). Thus, *Jumara* shifts the burden, ordinarily borne by the movant for transfer, to show that transfer is appropriate, to the *non-movant,* who must instead show that transfer pursuant to a forum selection clause is *not* appropriate.

Terra argues that such a shifting of the burden is inappropriate in this case, where the movant for transfer, MCC, bears the burden of showing both that transfer is appropriate and that there are exceptional circumstances overcoming the first-filed rule. However, MCC can meet its initial burden to show that transfer is appropriate by demonstrating that the forum selection clause weighs in favor of transfer and that the other § 1404(a) factors do not weigh decisively to the contrary. Furthermore, MCC can meet its burden to overcome the first-filed rule by showing that transfer is appropriate. In these circumstances, the court does not find it inappropriate for Terra to bear the burden of showing why it should not be bound by a forum selection clause to which it agreed, if that forum selection clause is applicable to the claims Terra asserts. *See, e.g., Jumara,* 55 F.3d at 880. To hold otherwise would

1995) (recognizing that *Stewart* considered *Bremen* "instructive," and concluding that "[f]or this Court's purposes [on a motion to transfer pursuant to a forum selection clause], *Bremen* supports the prima facie validity of forum choice clauses and indicates that such provisions are to be given significant weight as a legitimate expression of the parties' forum selection.").

allow a party to escape a forum selection clause to which that party has agreed simply by winning the race to the courthouse. Such a result is inappropriate in light of the Supreme Court's general recognition of the applicability of forum selection clauses except in cases of "fraud, influence, or overweening bargaining power." *See The Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914.

In *Jumara,* the district court denied the defendant's motion to transfer pursuant to § 1404(a), and instead dismissed the action pursuant to 28 U.S.C. § 1406, after holding that the action had been brought in an improper venue, because the forum selection clause was dispositive and specified that the action had to be brought in state court in a certain county of Pennsylvania. *Jumara,* 55 F.3d at 880–81. The appellate court held that the federal district in which the action had been brought was one in which the action could have been brought, looking to federal jurisdictional and venue considerations under 28 U.S.C. § 1391(c), rather than to the forum selection clause, *id.* at 879, then concluded that the district court erred by considering the forum selection clause to be dispositive, and further erred in its construction of the forum selection clause. *Id.* at 880–81. The appellate court began its review with the district court's construction of the forum selection clause, concluding that the district court wrongly interpreted the forum selection clause as referring only to state court, rather than to federal court as well, in the specified county. *Id.* The appellate court found the forum selection clause to be "permissive," and thus left unresolved the question of the parties' intent as to whether to make an exclusive choice of the designated forum as the only one that could entertain the action between them, and therefore recourse had to be made to incorporated provisions of Pennsylvania law to determine whether the forum was intended as the exclusive choice. *Id.* at 881 (clause was "permissive," because it stated that "either party *may* request," but incorporated law stated that action "shall" be brought in the specified court). The appellate court then catalogued its consideration of other § 1404(a) factors. *Id.* at 882. Finding no factors of convenience, interest of justice, or other "relevant"

factors sufficient to overcome the "substantial consideration" due the forum selection clause, as the appellate court had construed it, the appellate court ordered transfer of the action to the federal venue identified in the forum selection clause. *Jumara,* 55 F.3d at 883.

In *Brock,* the Fourth Circuit Court of Appeals also applied *Stewart's* standards to the question of whether the district court had properly refused to retransfer a suit from a forum specified in a forum selection clause to the one in which the plaintiff had originally brought suit:

Under *Stewart,* the Virginia District Court properly refused to retransfer the Brock claims to Texas. Here, the convenience of the witnesses favors neither Texas nor Virginia, as numerous witnesses live in each state. In addition, the convenience of the parties favors neither state. No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away. The one factor which weighs heavily in favor of Virginia is the forum selection clause included in the contract the parties entered into: the clause provides that the forum will be Virginia.

The *Stewart* Court stated that forum selection clauses "should receive neither dispositive consideration" nor "no consideration ... but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31, 108 S.Ct. at 2245. Here, the forum selection clause is dispositive only because no other factors tip the balance under a careful § 1404(a) analysis. The Virginia District Court properly denied retransfer under § 1404(a), and, therefore, its ruling was not an abuse of discretion.

*Brock,* 933 F.2d at 1258. Similarly, the Sixth Circuit Court of Appeals read *Stewart* as establishing that "in reviewing the transfer decision under § 1404(a) we are concerned only with such questions as whether consideration of convenience to parties and witnesses and other burdens associated with proceeding in the agreed jurisdiction [in the forum selection clause] render enforcement [of the clause] unreasonable under the circumstances." *Moses,* 929 F.2d at 1136. In

*Moses,* the appellate court found that no "fairness" considerations required the court to "nullify" the forum selection clause, because any claims of fraud or deceit concerning the contract did not pertain to the inclusion of that clause. *Id.* at 1138. The court also rejected arguments asserted in terms of "manifest injustice" of litigating in the forum selected in the contract between the parties, first rejecting unequal bargaining arguments, the arguments that clearly invoked "convenience of the parties":

> Mr. Moses was unable to estimate how much more it would cost to try the case in Michigan than in Alabama. There is no reason why the testimony of witnesses could not be presented by deposition. Of course, the plaintiffs rather than the defendants would be required to bear the expense of travel. This is inherent in a forum selection clause. Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others. This is not a reason for declaring such clauses invalid.

*Moses,* 929 F.2d at 1138–39. The appellate court therefore concluded that there had been no error in denial of retransfer from the forum selected in the forum selection clause in the parties' contract. *Id.* at 1139; *see also Red Bull Assocs.,* 862 F.2d at 966–67 (refusal to transfer pursuant to a forum selection clause was not an abuse of discretion where consideration of § 1404(a) factors, as dictated by *Stewart,* outweighed the forum selection clause's choice of forum).

The district courts have grappled with the weight of a forum selection clause in a transfer analysis, and hence have been guided by the *Stewart* decision in determining the weight to be given such clauses in the transfer analysis, with far more regularity than have the courts of appeals. Yet, the decisions of the district courts do not indicate any trend contrary to that apparent from the decisions of the courts of appeals, as recent cases show. *See, e.g., Shaw Group, Inc. v. Natkin & Co.,* 907 F.Supp. 201, 204–06 (M.D.La.1995) (*Stewart* is controlling on the question of the weight to be given a forum selection clause in a transfer analysis, and "but for the forum selection clause, the Court would likely deny the motion to transfer," because other factors under § 1404(a) did not tip significantly toward one forum or the other; however, the clause was "dispositive" in that case, even if the clause was not controlling, because "enforcing the parties' contractual obligations is exactly the type of consideration that falls within the 'interest of justice' rubric," and the clause was freely and fairly negotiated between experienced parties of equal bargaining power, and the resulting forum was "entirely reasonable" where no other factors "meaningfully tipped the balance" in favor of the other forum); *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211 (S.D.N.Y.1995) ("A forum selection clause is not itself dispositive on a motion to transfer, and the district court should still examine the 'public policy ramifications of transfer decisions,'" but the clause is a "significant factor," citing *Stewart;* the district court concluded the tort claims were not covered by the forum selection clause, which was narrowly stated to address only actions for enforcement of contractual obligations, and remaining factors also weighed "heavily" against the selected forum); *ABC Rental Sys., Inc. v. Colortyme, Inc.,* 893 F.Supp. 636, 638–39 (E.D.Tex.1995) (pursuant to *Stewart,* the district court considered a forum selection clause as a factor in a § 1404(a) transfer analysis, and transferred the case pursuant to the clause, because no other factors dictated a contrary result; "[a]lthough a plaintiff's choice of forum is traditionally accorded deference, that deference is inappropriate where the plaintiff has already contractually chosen the venue via a forum selection clause."); *Contraves, Inc. v. McDonnell Douglas Corp.,* 889 F.Supp. 470, 471–73 (M.D.Fla.1995) (citing *Stewart* as the standard for transfer of cases involving forum selection clauses, and finding such a clause dictated the proper forum, because it was neither "invalid" nor "unreasonable," citing *The Bremen,* even though none of the parties, witnesses, or evidence was located in the selected forum; the parties had negotiated at arms length and the clause indicated their preference; the court specifically rejected the plaintiff's proffered rule that courts should refuse to enforce an otherwise valid forum selection clause if the chosen

forum was unrelated to the dispute on the ground that it would encourage parties to ignore contractual obligations, which would be an impairment of an interest of justice); *Huntingdon Eng'g v. Platinum Software Corp.*, 882 F.Supp. 54, 57–58 (W.D.N.Y.1995) (although the party moving for transfer generally bears the burden of showing that the forum should be changed, the burden shifts to the plaintiff when there is a forum selection clause supporting transfer to "demonstrate exceptional facts explaining why he should be relieved from his contractual duty," citing *Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y.1992), and *The Bremen*, and finding that *Stewart* states that a forum selection clause is a significant factor in the transfer calculus; the court held that "mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum," because the forum selection clause is determinative of convenience).

In the present case, the court has found that the forum selection clause is valid and reasonable, and was fairly negotiated as part of the licensing agreement. *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. In these circumstances, Terra "has already freely contractually chosen an appropriate forum," and the court finds Terra must therefore "bear the burden of demonstrating why [it] should not be bound by [its] contractual choice of forum." *Jumara*, 55 F.3d at 880. The court has already found that consideration of all other § 1404(a) factors shows that the balance of convenience is "flat," so that the forum selection clause, entitled to "significant" weight in any event, *Stewart*, 487 U.S. at 30–31, 108 S.Ct. at 2244–45, is the *only* factor which may tip the balance one way or another in this case. The court therefore turns to Terra's arguments that it should *not* be bound by the forum selection clause in question here.

■ *ii. "Mandatory" and "permissive" forum selection clauses.* Although a forum selection clause is *ordinarily* entitled to "significant" weight in a transfer analysis, Terra argues, for the first time in its supplemental brief, that the forum selection clause

in this case is entitled to no weight whatsoever. Terra contends that this is so, because the forum selection clause at issue is neither mandatory nor exclusive. There are several answers to this argument.

First, the court concludes that the forum selection clause in this case is mandatory and exclusive. The clause states that "[a]ny dispute or disputes arising between the parties hereunder ... will be determined in the District Court of the United States for the Southern District of Mississippi...." Terra contends that "will" is permissive, whereas "shall," or "must" would have been mandatory, and that there is a total absence of words, such as "only" or "exclusively," which would indicate that the United States District Court for the Southern District of Mississippi is the *exclusive* forum for actions between the parties. Terra's arguments cannot stand, however, in the face of a number of decisions distinguishing between "mandatory" and "permissive" forum selection clauses, nor in the face of the ordinary meaning of the words used in the clause.

■ Whether a forum selection clause is mandatory or permissive is a matter of contract interpretation reviewed *de novo*. *Northern California Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1036 (9th Cir.1995) (hereinafter *"Council of Laborers "*) (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir.1987)); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345 (10th Cir.1992) (whether a forum selection clause is "mandatory" or "permissive" is a question reviewed *de novo*, because it is "basically one of contract interpretation," also citing *Hunt Wesson Foods*, 817 F.2d at 77). Furthermore, where the clause is ambiguous as to whether or not it is mandatory, it should be construed against the drafter. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir.1994); *Milk 'N' More*, 963 F.2d at 1346 (also concluding that an ambiguity as to the permissive or mandatory nature of the clause should be construed against the drafter); *Hunt Wesson Foods*, 817 F.2d at 78 (forum selection clause that is ambiguous as to mandatory nature of clause should be construed against drafter).

Terra's argument, apparently, is that a forum selection clause that is neither mandatory nor exclusive may be disregarded, that is, not enforced, by the courts. The Second Circuit Court of Appeals has stated the "general rule" in cases involving interpretation and enforcement of forum selection clauses: "When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir.1989); *see also Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir.1987); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956–57 (5th Cir.1974); *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1231–32 (11th Cir.1985). Of course if mandatory venue language is employed, the clause will be enforced. *Docksider*, 875 F.2d at 764; *see also Seward v. Devine*, 888 F.2d 957, 962 (2d Cir.1989); *Sterling Forest Associates, Ltd. v. Barnett–Range Corp.*, 840 F.2d 249, 251–52 (4th Cir.1988).

*John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc.*, 22 F.3d 51, 52–53 (2d Cir.1994); *see also Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992) ("The law is clear: where venue is specified in mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive," citing *Docksider*, 875 F.2d at 764). In developing this general rule, the Second Circuit Court of Appeals noted that " 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion....' " *Id.* at 53 (quoting *City of New York v. Pullman, Inc.*, 477 F.Supp. 438, 442 n. 11 (S.D.N.Y.1979); emphasis in the original). The court therefore held that the following forum selection clause was only permissive, as it only conferred jurisdiction on the Greek courts without making that jurisdiction exclusive: "Any dispute arising between the parties hereunder shall come within the jur-

isdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." *Id.* at 52.

Although Terra asserts that the "mandatory" and "exclusive" criteria are separate prongs of the analysis of the enforceability of a forum selection clause, in *Council of Laborers*, the Ninth Circuit Court of Appeals defined one of those criteria in terms of the other: "To be *mandatory*, a clause must contain language that clearly designates a forum as the *exclusive* one." *Council of Laborers*, 69 F.3d at 1037 (emphasis added). Therefore, because the forum selection clause at issue in that case, which stated that an arbitration decision "shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco," did not designate the named court as the exclusive court with jurisdiction to enforce the arbitration award, the clause was only permissive. *Id.* The court compared this language with another clause, also held to be permissive, in *Hunt Wesson*, 817 F.2d at 76, which stated that the courts of Orange County, California, "shall have jurisdiction over the parties in any action" arising out of the contract. *Id.* The court also contrasted the clause with others held to be mandatory. *Id.* (*Pelleport Inv., Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275 (9th Cir.1984), in which the clause read "this Agreement shall be litigated only in the Superior Court of Los Angeles," and *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir.1989), in which the clause was "rendered mandatory" by inclusion of language that "venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia"). A similar interrelationship of the "mandatory" and "exclusive" elements is apparent in the decision of the Sixth Circuit Court of Appeals in *General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 (6th Cir.1994), in which the court held that "[b]ecause the clause states that 'all' disputes 'shall' be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory." *General Elec.*, 29 F.3d at 1099 (citing *The Bremen*, 407 U.S. at 2 & 15, 92 S.Ct. at 1909 & 1916, as holding that a forum

selection clause stating that "any" dispute arising from a contract "must" be brought before a London court was binding on the parties unless the clause was shown to be unreasonable or unjust); *see also Caldas & Sons*, 17 F.3d at 127–28 (discussing the enforceability of a forum selection clause first in terms of whether it was "mandatory" or "permissive," then in terms of whether enforcement of a mandatory clause should nonetheless be withheld as "unjust" or "unreasonable"; the clause at issue, which stated that "[t]he law and courts of Zurich shall be applicable," was ambiguous, because, although "shall" was generally mandatory, the clause only provided clearly that the parties consented to the jurisdiction of the Zurich courts, not that the jurisdiction of those courts was exclusive, and the ambiguity was construed against the drafter to defeat application of the clause).

An analysis of specific language of interest here is found in the decision of the Seventh Circuit Court of Appeals in *Paper Express*. *Paper Exp., Ltd.*, 972 F.2d at 756–57. In *Paper Express*, the court first found that there was a forum selection clause in the contract by virtue of incorporation of the rules of the Verband Deutscher Maschinen- und Anlagenbau e.V., a German machine manufacturers' association, known as the VDMA. *Id.* at 755. The forum selection clause thereby incorporated from the VDMA rules stated as follows:

> In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier, or its branch office which is carrying out the delivery.... The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business.

*Paper Exp.*, 972 F.2d at 755. The court rejected arguments that this forum selection clause was permissive, because the clause did more than specify a jurisdiction without making that jurisdiction exclusive. *Id.* at 756. First, the court found that the addition of the sentence providing that the supplier also has the right to commence an action against the purchaser in the purchaser's principal place

of business "supports a finding that the clause confers exclusive jurisdiction because the sentence in question would be appropriate and meaningful only if the clause were in fact mandatory[, but] if the clause were permissive, the additional sentence would be redundant." *Id.* at 756. In other words,

> The specific reservation of the supplier's *right* to file suit at the purchaser's place of business demonstrates that the clause was in all *other* respects mandatory and exclusive.

*Paper Exp.*, 972 F.2d at 756. The court in *Paper Express* then found other language further demonstrating that the clause was mandatory:

> The language is obligatory. The phrase "shall be filed," coupled with the phrase "all disputes," clearly manifests an intent to make venue compulsory and exclusive.

*Id.* (citing cases holding that similar language, which stated that "venue," "the place of litigation," or that "suit shall be brought" in some specified court, conferred exclusive jurisdiction); *see also Milk 'N' More*, 963 F.2d at 1343–44 (clause stating that "venue shall be proper under this agreement in Johnson County, Kansas," was "precise and mandatory," and could not refer to any other venue as proper); *Docksider*, 875 F.2d at 764 (clause stating "Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia" was mandatory, over plaintiff's objections that there were no "express mandatory terms such as 'exclusively,' " because the language of the clause was such that the plaintiff "not only consented to the jurisdiction of the state courts of Virginia, but further agreed by mandatory language that the venue for all actions arising out of the license agreement would be Gloucester County, Virginia. This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county," and even if other states might have jurisdiction, "all actions must be filed and prosecuted in Virginia"); *Hunt Wesson Foods*, 817 F.2d at 77–78 (clause that stated the specified court "shall have jurisdiction" was permissive as compared to mandatory clauses stated in terms such as "any dispute shall be brought" or disputes "shall be litigat-

ed only in" a specified court, because in each of those cases it was clear that the language mandated more than the jurisdiction of a particular court).

***iii. Is this clause entitled to "significant" weight or "no weight"?*** In the present case, the court concludes that the forum selection clause is indeed mandatory and exclusive. The clause states that "any disputes ... will be brought" in the specified court. *General Elec.*, 29 F.3d at 1099 ("[b]ecause the clause states that 'all' disputes 'shall' be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory"); *Paper Exp.*, 972 F.2d at 756 ("The phrase 'shall be filed,' coupled with the phrase 'all disputes,' clearly manifests an intent to make venue compulsory and exclusive."). Thus, the clause is not merely a consent to jurisdiction clause that does not exclude the jurisdiction of other courts, but instead states the venue where all litigation "will be brought." *Milk 'N' More*, 963 F.2d at 1343–44 (a clause stating that "venue shall be proper" in one court was "precise and mandatory," and could not refer to any other venue as proper); *Docksider*, 875 F.2d at 764 (a clause stating "venue of any action" was mandatory and exclusive, not merely a consent to jurisdiction); *Hunt Wesson Foods*, 817 F.2d at 77–78 (clauses stating the place where "any dispute shall be brought" or that disputes "shall be litigated only in" a specified court were recognized as mandatory). Specific terms of exclusivity, such as "exclusively" or "only," as urged by Terra, simply are not required. *Docksider*, 875 F.2d at 764 (plaintiff's objections that

there were no "express mandatory terms such as 'exclusively' '" were unavailing where clause demonstrated agreement to venue for all actions in one specific court).

Because the court concludes that the absence of specific terms of exclusivity is not fatal to the forum selection clause in this case, and furthermore, that the language specifying that any disputes be brought in a specified court renders the clause mandatory, Terra's only remaining argument that the clause is "permissive" is that the use of "will" in the forum selection clause, rather than the more typical "shall," renders it so.

The court cannot accept Terra's assertion that "will" is any less mandatory than "shall." Terra's entire basis for this argument is that the dictionary definition of "will" as "used to express desire, choice, willingness, consent," indicates that the word is permissive. Plaintiff Terra International, Inc.'s Surreply In Support Of Its Motion For Permanent Injunction And In Opposition To Mississippi Chemical Corporation's Motion To Transfer Or Stay (hereinafter, "Terra's Surreply"), at p. 16 & n. 13 (citing WEBSTER'S NEW COLLEGIATE DICTIONARY 1341 (1977)). The court is not convinced that this definition renders the word "permissive," but it is plain that such a construction of the word as merely "permissive" is contrary to both contractual and statutory interpretations[25] of the word. *See (contractual interpretation cases) Den–Tal–Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 566 A.2d 1214, 1222 (1989) ("A purely common sense reading of paragraph 3(a) of the Agreement clearly indicates, in its

---

**25.** It is appropriate to consider statutory, as well as contractual, interpretations of "will," because in each circumstance, words are to be interpreted according to their typical, usual, ordinary, or common meanings, unless differently defined in the document, statute, or regulation in question. *See, e.g., Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984) (in determining contract terms, the court must consider the whole instrument and the natural and ordinary meaning of the language it uses); *Bituminous Casualty Corp. v. Advanced Adhesive Technology, Inc.*, 73 F.3d 335 (11th Cir.1996) (under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning); *Smart v. Gillette Co. Long–Term Disability Plan*, 70 F.3d 173, 178 (1st Cir.1995)

(in construing the terms of contracts that are governed by federal common law, the court is guided by "common-sense cannons of contract interpretation," including the canon that unambiguous terms are giving their plain and natural meaning); *see also Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993) (absent specific statutory definitions, words in statutes are presumed to have their ordinary or natural meanings); *Hefti v. Commissioner of I.R.S.*, 983 F.2d 868, 870 (8th Cir.1993) (tax court properly applied rule that regulation should be interpreted consistent with the usual meaning of its terms); *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 826–28 (7th Cir.1996) (same).

use of mandatory terms such as "shall", "will", and "must", that Siemens fully intended a stamping requirement in its inclusion of this paragraph in its preprinted form."); *Beville v. University of South Dakota/South Dakota Bd. of Regents,* 420 N.W.2d 9, 16 (S.D.1988) (Sabers, J., dissenting) (dissenting from the majority opinion on the ground that a section of the employment agreement in question stated that " ' "Will" is a verb having the mandatory sense of "shall" or "must". It is a word of certainty....' "); *Collier Cobb & Assocs., Inc. v. Leak,* 61 N.C.App. 249, 300 S.E.2d 583, 585 (1983) ("The second sentence provides the contract may be terminated by either Employer or Agent upon mailing or delivering to the other party thirty days' written notice. In using the permissive term 'may' rather than such mandatory terms as 'shall,' 'will,' or 'must,' the parties implicitly acknowledge the existence of other acceptable methods of termination."); *accord (statutory interpretation cases); Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983) (finding liberty interests are created by statutes or regulations containing "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must,' be employed...."); *Jones v. Coonce,* 7 F.3d 1359, 1363 (8th Cir.1993) (citing *Hewitt* for this proposition); *Hall v. Lombardi,* 996 F.2d 954, 958–59 (8th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994); *Knight v. Armontrout,* 878 F.2d 1093, 1095 (8th Cir.1989) (same, citing *Clark v. Brewer,* 776 F.2d 226, 230 (8th Cir.1985)). Thus, it is plain that "will be brought," in the forum selection clause at issue here, is every bit as mandatory as the clause would have been had it read "shall be brought." [26]

Furthermore, the court has found no case stating that only a mandatory and exclusive forum selection clause can have any weight in a transfer analysis, and Terra has cited no such case. Instead, Terra asserts that the forum selection clauses in both *Stewart* and *The Bremen* were mandatory and exclusive. However, the court finds nothing in *Stewart* to suggest that it was the mandatory nature or exclusivity of the forum selection clause that entitled it to "significant weight" in the transfer calculus. Rather, the weight afforded the forum selection clause stemmed from its indication of the preference of the parties for a particular forum in the district court's discretionary determination of whether or not to transfer a case. *Stewart,* 487 U.S. at 29–31, 108 S.Ct. at 2243–45. Even a "permissive" forum selection clause is indicative of the parties' preference for a particular forum. Furthermore, it is important to distinguish between circumstances in which a court is called upon to "enforce" a forum selection clause by dismissing an action for improper venue, and the situation presented here, in which a party seeks to rely upon the forum selection clause as tipping the balance in favor of the stated forum in the court's discretionary weighing of all relevant factors under § 1404(a).[27] In

---

**26.** Terra relies on subsequent forum selection clauses in subsequent licensing agreements MCC has used in which, among other things, "shall" has replaced "will," and words of exclusivity, such as "only" or "exclusively" have been inserted. However, the court would only consider such evidence if it found the present forum selection clause to be ambiguous. *See, e.g., Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir.1988) (district court properly refused to admit evidence that the plaintiff did not intend the forum selection clause to apply to tort claims, because "[t]raditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract"). However, the court concludes that the present forum selection clause is not ambiguous, at least not in the respects presently at issue, and therefore the court has no ground to consider such evidence.

**27.** Admittedly, courts have not always expressly made the distinction the court makes here between "enforcement" of a forum selection clause, and transfer to a forum selected in a forum selection clause, which this court views as not an "enforcement" of the clause, but a consideration of the clause among other factors. For example, in *Brock v. Entre Computer Ctrs., Inc.,* 740 F.Supp. 428 (E.D.Tex.1990), *aff'd on other grounds,* 933 F.2d 1253 (4th Cir.1991), the district court characterized *Stewart* as holding "that a motion to enforce a forum selection clause in a diversity case is governed by the federal venue statute, 28 U.S.C. § 1404(a)." *Brock,* 740 F.Supp. at 430. This is a mischaracterization of *Stewart,* both procedurally and substantively. In *Stewart,* the motion under consideration was not to "enforce a forum selection clause," but a motion to transfer pursuant to 28 U.S.C.

the former case, in which the question is enforcement of the clause, the "mandatoriness" of the forum selection clause is of critical importance. However, in the latter case, it is the expression of the preference of the parties in the clause, not its "mandatoriness," that is of critical importance. In this latter case, transfer will only be effected to the specified forum if the balance of other factors also dictates that the specified forum is proper, or if the balance of other factors fails to indicate that one forum or another should be preferred. The court therefore finds in its discretionary power to grant a transfer, the authority to consider a merely "permissive" forum selection clause as weighing "significantly" in the transfer calculus.

The court concludes that the forum selection clause at issue here is mandatory, because it is exclusive, but even were it not so, it would be entitled to significant weight in the transfer calculus. Having untangled the knotty questions of the weight to be given this forum selection clause in the court's transfer analysis, and the interplay between the clause and other factors in that analysis, the court must still determine the applicability of the forum selection clause at issue to the claims Terra has brought in this litigation.

### b. Applicability of the forum selection clause

The parties have presented the court with a syntactical knot worthy in itself of Alexander's sword in their arguments over the applicability of the forum selection clause at issue here to the tort claims Terra asserts. Terra contends that an analysis of the language and construction of the forum selection clause demonstrates plainly that the clause was meant to apply only to contract claims.

MCC asserts that the clause just as plainly applies to the tort claims Terra asserts, but that even if it didn't explicitly apply to such claims, Terra should not manage to evade the scope of the forum selection clause by artful pleading of tort causes of action that plainly are related to the parties' contractual relationship. The court will therefore seek to untangle two final, but very complex, knots in the strand of legal reasoning that will lead the court to a proper disposition of the pending motions. The court must address the parties' heated debate over the meaning of the forum selection clause, then consider what is generally the applicability of a contractual forum selection clause to tort claims, and, more specifically, what is the applicability of this contractual forum selection clause to the tort claims brought here.

■ *i. The syntactical knot.* Before undertaking the syntactical analysis called for by the parties, it would be well to reiterate the language of the forum selection clause at issue. That clause, and its companion choice-of-law clause, read as follows:

This Agreement will be construed in accordance with the laws of the State of Mississippi. *Any dispute or disputes arising between the parties hereunder,* insofar as the same cannot be settled by friendly agreement, *will be determined in the District Court of the United States for the Southern District of Mississippi* and, for the purposes of instituting such suit, COMPANY hereby consents to service in connection therewith through the Secretary of State for the State of Mississippi.

The focus of the grammatical arguments is the choice of the word "hereunder" and its placement in the clause.[28] MCC argues that

§ 1404(a). *Stewart,* 487 U.S. at 24, 108 S.Ct. at 2240–41 ("Relying on the contractual forum-selection clause, respondent moved the District Court either to transfer the case to the Southern District of New York under 28 U.S.C. § 1404(a) or to dismiss the case for improper venue under 28 U.S.C. § 1406."). *Stewart* held, not that a forum selection clause may be "enforced" through transfer under § 1404(a), but that whether or not transfer pursuant to the statute was proper involved consideration of the forum selection clause as a "significant," but not a "dispositive," factor. *Id.* at 29–31, 108 S.Ct. at

2243–45. Thus, *Stewart* cannot be read as a case in which the forum selection clause was "enforced." On appeal from the district court's decision in *Brock,* the Fourth Circuit Court of Appeals properly characterized the impact of the forum selection clause in light of *Stewart:* "Here, the forum selection clause is dispositive only because no other factors tip the balance under a careful § 1404(a) analysis." *Brock,* 933 F.2d at 1258.

**28.** The court has found only two cases, one federal and one state, in which a forum selection

"hereunder" refers to the *parties*, and the language stating "any dispute or disputes arising between the parties" plainly applies to tort as well as contract claims. Terra argues that if the word "hereunder" was meant to refer to *parties*, it should have been "hereto." Terra points out that "hereunder" is an adverb, and, as such, usually modifies either a verb or an adjective, and in this case must modify what Terra calls the "verbal adjective" "arising." Furthermore, Terra brands MCC's interpretation "absurd" and "overly expansive," because, according to Terra, if "hereunder" refers to the parties, the forum selection clause would encompass any dispute between the parties, irrespective of the subject matter, time, or place. Terra gives as an example of this absurdity, its assertion that the forum selection clause, interpreted as MCC would have it, would apply to "a truck accident in California involving Terra and MCC vehicles, even in the year 2000." Terra's Surreply, p. 5. The court concludes that Terra's arguments do more to tangle the thread of meaning in the clause than they do to untangle it.

First, Terra asserts that "hereunder" means "under or in accordance with this writing or document," *see* WEBSTER'S NEW COLLEGIATE DICTIONARY 536 (1977), which Terra asserts means the reference must be to disputes under the agreement, *i.e.*, contract disputes. Terra contrasts the meaning of "hereto," which it offers as "to this writing or document," which might properly pertain to the parties. *Id.* Terra points to another part of the licensing agreement between the parties in which the word "hereto" is used once where clearly referring to parties, because "hereunder" is used in the same sentence as referring to obligations under the contract.[29] However, even Terra recognizes that the word "hereunder" has senses other than the dictionary definition it prefers, including "under this" and "subsequently (mentioned or set down) in this document," THE OXFORD ENGLISH DICTIONARY 240 (1933), and "[a] word of reference in a document of law, directing attention to matter therein which follows in such document or is contained therein." BLACK'S LAW DICTIONARY 728 (6th ed., 1990).[30] The court concludes that a common sense understanding of the meaning of the word "hereunder" does not preclude its reference to the parties in the forum selection clause. In such a case, the word would have the sense of indicating parties "referenced," "set down," or "mentioned below," or, to put it another way, it would have the same sense as "undersigned" parties. In this sense, "hereunder" simply identifies the parties whose disputes will be settled in the selected forum to be the parties to the contract. The court is satisfied that the sense of the forum selection clause is not destroyed by reading "hereunder" to refer to "parties," even if another word, "hereto," could also have been used, and no ambiguity is created

---

clause in substantially identical language, at least as to the placement of "hereunder," was at issue. *See John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distrib., Inc.*, 22 F.3d 51, 52 (2d Cir.1994) (the forum selection clause at issue stated, "Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts."); *Matter of Application of Affiliated Coat and Apron Supply Co.*, 153 N.Y.S.2d 970, 971 (N.Y.Sup.Ct.1956) (the clause read "Any and all complaints, grievances, or disputes arising between the parties hereunder, on account of, or in connection with or in relation to this Agreement or the interpretation, performance, termination or any alleged breach thereof, shall forthwith be left for arbitration and final determination" to an arbitrator). However, neither court reached the issues under consideration here. *John Boutari*, 22 F.3d at 52–53 (finding that the clause was only a consent to jurisdiction clause, not a mandatory forum selection clause; instructive here, in the proper place,

because of the contrast between "shall come within the jurisdiction" in the Boutari contract, plainly only a consent to jurisdiction, and "will be brought" in the Terra–MCC agreement, which just as plainly indicates the exclusive venue as well as jurisdiction); *Affiliated Coat*, 153 N.Y.S.2d at 972–73 (considering whether the agreement was obtained by duress; contrast, for our purposes, the difference between this clause, in which "hereunder" appears to refer to parties, because the nature of the disputes, and the relationship of those disputes to the contract, is further expressly stated).

**29.** Terra points to paragraph 10 of the licensing agreement, which states, "Neither party *hereto* will assign any of its rights or obligations *hereunder* to any person...." Licensing Agreement, ¶ 10 (emphasis added).

**30.** This is the same definition Terra quotes from BLACK'S LAW DICTIONARY 654 (5th ed., 1979).

because of the choice of the word actually appearing in the clause.

The court is equally unpersuaded, for several reasons, by Terra's argument based upon what an adverb, such as "hereunder," can modify. First, looking to a subsequent edition of the same authority Terra has relied upon, the court finds that an adverb may modify not only "a verb [or] an adjective," but "another adverb, a preposition, a phrase, a clause, or a sentence...." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 59 (1991). Thus, the adverb "hereunder" can, and the court finds does, modify the prepositional phrase "between the parties." Furthermore, although Terra argues that "hereunder" is an adverb, and therefore must modify the "verbal adjective" "arising," it neglects to point out that "hereto," its word choice, is also an adverb. Terra does not argue for any necessary relationship between the adverb "hereto" and the identified "verbal adjective," nor could it do so. Terra is content for "hereto" to refer to the parties, without explanation of the grammatical grounds for such a conclusion, but rejects the idea that another adverb, with a similar sense, in an identical position, could also refer to the parties, or, more properly, modify the prepositional phrase in which "parties" appears. Finally, what the forum selection clause plainly does not say, is "Any dispute or disputes arising hereunder between the parties ...," or "Any dispute or disputes, arising between the parties, hereunder ...," or "Any dispute or disputes hereunder arising between the parties ...," any of which could reasonably bear the meaning Terra wishes the forum selection clause to have. Contrary to Terra's assertions, word order, or proximity of an adverb to the thing it modifies, does matter, as these examples demonstrate. The court will not rearrange the language of the sentence to suit Terra's preferred interpretation.

Terra's "absurdity" argument fares no better. Here, Terra has overlooked two principles concerning the force and effect of forum selection clauses. First, even an applicable forum selection clause will not be "enforced" if to do so would be "unreasonable" or "unjust." *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. Plainly, application of a forum selection clause in a contract that is wholly unrelated to the events giving rise to the lawsuit would be both unjust and unreasonable. This conclusion serves as the transition to the second principle Terra has overlooked, which is developed more fully in the following section, that a contractual forum selection clause will generally apply to tort claims only if those tort claims are directly or indirectly related to the contractual relationship of the parties. *Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir.1986). The scenario Terra poses in support of its "absurdity" argument would therefore not be one in which the forum selection clause at issue here dictated the proper forum, or could even be construed to indicate the preference of the parties as to the proper forum.

The court does not find the forum selection clause at issue here either vague or ambiguous on the basis of its language and grammatical construction. Because the court does not find the clause ambiguous, it never reaches Terra's assertions that MCC has used "better" language in other forum selection clauses with its licensees. *See, e.g., Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir.1988) (district court properly refused to admit evidence concerning the meaning of a forum selection clause, because "[t]raditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract"). The clause at issue here applies to "any disputes" between the parties to the contract, which is broad enough to encompass the tort claims Terra has brought here, at least if they bear the necessary relationship to the parties' contractual relationship. The court will seek to unravel the confusions in the issue of what tort claims bear the necessary relationship in the following subsection.

*ii. General scope of forum selection clauses.* Although the court concluded immediately above that the forum selection clause in question here applies to Terra's tort claims, at least if those tort claims bear a proper relationship to the contractual relationship of the parties, the court must now consider what is generally the scope of a

contractual forum selection clause. The court finds that Terra's assertion of tort claims would not necessarily evade a forum selection clause even if that clause, by its terms, applied only to contract causes of action. The fact that the clause applies to "any disputes," however, plainly expands the scope of the clause to include the tort claims at issue here.

In *Lambert v. Kysar*, 983 F.2d 1110 (1st Cir.1993), the First Circuit Court of Appeals stated what it found to be the "better general rule" of the applicability of a contractual forum selection clause to tort claims:

> [W]e think ... that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.

*Lambert*, 983 F.2d at 1121–22. The court recognized that another court had refused to transfer contract-related tort claims where the plaintiff asserted no breach of contract claim, and the tort causes of action did not directly concern formation or enforcement of the contract containing the forum selection clause. *Id.* at 1122 (citing *General Environmental Science Corp. v. Horsfall*, 753 F.Supp. 664, 668 (N.D.Ohio 1990)). However, the court could not "accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute" even where the forum selection clause did not directly cover the tort claims. *Id.* at 1121 (quoting *Pascalides v. Irwin Yacht Sales North, Inc.*, 118 F.R.D. 298, 301 (D.R.I.1988), in turn quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983)). The court enforced the clause, even though the tort claims asserted related only to the formation, rather than to the performance, of the contract, because the plaintiff did not claim that the fraud related to the inclusion of that clause in the contract. *Id.* (citing *The Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914, and *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974)).

A similar rule was stated by the Ninth Circuit Court of Appeals in *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir.1988). In *Manetti–Farrow*, the court rejected the plaintiff's argument that his tort claims [31] were not covered by a forum selection clause in a contract between the plaintiff and one of the defendants, and therefore all claims in the plaintiff's lawsuit were dismissed as having been brought in the wrong forum. *Manetti–Farrow*, 858 F.2d at 511. The forum selection clause in question provided that Florence, Italy, would be the forum for resolving disputes regarding "interpretation" and "fulfillment" of the contract. *Id.* at 514. The plaintiff argued that its claims were "pure" tort claims, independent of the contract. *Id.* The court wrote:

> We first note that forum selection clauses can be equally applicable to contractual and tort causes of action. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Weidner Communications, Inc. v. Faisal*, 671 F.Supp. 531, 537 (N.D.Ill.1987); *Clinton v. Janger*, 583 F.Supp. 284, 287–88 (N.D.Ill.1984). Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. *Weidner Communications*, 671 F.Supp. at 537; *Berrett v. Life Ins. Co. [of the Southwest]*, 623 F.Supp. 946, 948–49 (D.Utah 1985); *Clinton*, 583 F.Supp. at 288. We must, therefore, determine if Manetti–Farrow's claims require interpretation of the contract. *See Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.1983).

---

**31.** The plaintiff's tort claims were as follows: (1) conspiracy to interfere with contractual relations; (2) conspiracy to interfere with prospective economic advantage; (3) tortious interference with contractual relations; (4) tortious interference with prospective economic advantage; (5) breach of implied covenant of good faith and fair dealing; (6) unfair trade practices; (7) another cause of action for breach of an implied covenant of good faith and fair dealing against another defendant; and (8) trade indebtedness. *Manetti–Farrow*, 858 F.2d at 511 & n. 1.

*Manetti–Farrow,* 858 F.2d at 514. The court concluded that the claims before it could not be adjudicated without analyzing whether the parties were in compliance with the contract. *Id.* Therefore, the court concluded, because the tort causes of action "relate[d] to 'the central conflict over the interpretation' of the contract, they [were] within the scope of the forum selection clause." *Id.* This conclusion applied even to the claims against defendants who were not parties to the contract, because "the alleged conduct of the non-parties [to the contract] is so closely related to the contractual relationship that the.forum selection clause applies to all defendants." *Id.* at 514 n. 5.

The seminal case cited in both of these opinions offers a succinct and instructive discussion of the scope of a forum selection clause:

> Coastal has asserted tort claims as well as contract claims, and [the district court concluded] that the forum selection clause is inapplicable to the former. The difficulty with this reasoning is that it ignores the reality that the Tilghman–Farmer Norton contract is the basic source of any duty to Coastal. There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation. Coastal's claims ultimately depend on the existence of a contractual relationship between Tilghman and Farmer Norton, and those parties bargained for an English forum. We agree with those courts which have held that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain. *See Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718 (2d Cir.1982) (franchise agreement with forum selection

clause and antitrust claim); *Gordonsville Industries, Inc. v. American Artos Corp.,* 549 F.Supp. 200 (W.D.Va.1982) (contract for industrial installation with forum selection clause and state law design defect, negligence, and warranty claims); *Hoes of America, Inc. v. Hoes,* 493 F.Supp. 1205 (C.D.Ill.1979) (distributorship agreement with forum selection clause and state law business tort claim). Reliance on the [non-]contract claims as a reason for disregarding the forum selection clause was on this record improper.

*Coastal Steel,* 709 F.2d at 203. The Eleventh and Second Circuit Courts of Appeals apply similar rules. *See Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc) (holding that a forum selection clause could apply to tort actions as well, first, because it was "clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer-manufacturer relationship," because it referred to *"any* 'case or controversy arising under or in connection with this Agreement," and, second, because trying contract and related tort claims in the same forum "promotes the orderly and efficient disposition of the case in accordance with the parties' intent"), *aff'd and remanded on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988);[32] *Bense v. Interstate Battery Sys. of Am.,* 683 F.2d 718, 721–22 (2d Cir.1982) (forum selection clause that encompassed actions arising "directly or indirectly" from the contract applied to tort claims so related to the contract).

■ There are two guiding principles to be drawn from these cases. The first is that the critical question is not whether the language of the forum selection clause at issue expressly encompasses non-contract claims, but instead whether the non-contract claims asserted are directly or indirectly related to the contractual relationship of the parties. *Accord Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 852

---

**32.** In the appellate court's decision in *Stewart,* the Eleventh Circuit Court of Appeals also observed that "[c]ommercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law," which further supported application of a contractual forum selection clause to such claims.

(8th Cir.1986) (holding that claims of fraud, breach of fiduciary duty, and violations of securities laws and RICO were "broader than the clause," because they "d[id] not all arise directly or indirectly from the agreement"; the court also concluded that the plaintiff could not have anticipated litigating the claims in the selected forum, and pleading of the claims was not intended to evade the forum selection clause). This consideration of the relationship between the claims and the contractual relationship of the parties is apparent whether the court poses the question in a particular case in terms of whether the non-contract claims "involv[e] the same operative facts as a parallel claim for breach of contract," *Lambert*, 983 F.2d at 1121–22, whether "resolution of the [non-contract] claims relates to interpretation of the contract," *Manetti–Farrow*, 858 F.2d at 514, or whether the non-contract claims "ultimately depend on the existence of a contractual relationship." *Coastal Steel*, 709 F.2d at 203. Indeed, in *Manetti–Farrow*, the court also cast its statement of the test in terms very similar to those proffered by this court, asking whether "the alleged conduct . . . is so closely related to the contractual relationship that the forum selection clause applies." *Manetti–Farrow*, 858 F.2d at 514 & n. 5. The court then applied this test even to tort claims against non-parties to the contract between the plaintiff and one of the defendants, and found that the close relationship between the conduct complained of and the contractual relationship of the plaintiff and one of the defendants established that the forum selection clause applied to "all defendants." *Id.*

■ The second guiding principle for determination of the scope of a forum selection clause to be drawn from these cases is that courts will not tolerate "artful pleading" of non-contract claims to avoid a forum selection clause. *Lambert*, 983 F.2d at 1121 ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute," citing *Pascalides*, 118 F.R.D. at 301); *Coastal Steel*, 709 F.2d at 203 (the same public policy that favors enforcement of forum selection clauses "requires that they

not be defeated by 'artful pleading of [tort] claims' "). Thus, in *Coastal Steel*, the court rejected an argument that claims of negligent design, breach of implied warranty, or misrepresentation, fell outside the scope of the contractual forum selection clause, because the "reality" of the situation was that the contract was "the basic source of any duty" the defendant had to the plaintiff. *Coastal Steel*, 709 F.2d at 203. The courts have recognized the relationship between tort claims actually asserted and the contract or contract claims, whether or not the contract claims have actually also been asserted, so that the absence of a pleading of a contract claim does not make Terra's tort claims necessarily less related to the contractual relationship of the parties. *See Lambert*, 983 F.2d at 1121–22 (forum selection clause applied to both the contract and tort claims asserted by the plaintiff); *Manetti–Farrow*, 858 F.2d at 514 (only tort claims were asserted, but the contractual forum selection clause was still applicable); *Stewart*, 810 F.2d at 1070 (rejecting district court's conclusion that forum selection clause would not apply to tort claims as well as contract claims asserted); *Coastal Steel*, 709 F.2d at 203 (both tort and contract claims were asserted, and all were governed by the forum selection clause in the contract).

Decisions of the district courts are in accord with these principles. *See, e.g., Brock*, 740 F.Supp. at 430 (forum selection clause applies to tort claims as well as contract claims, and also applies to "transaction participants" even if they were not parties to the contract); *Vijuk Equip., Inc. v. Otto Hohner KG*, 728 F.Supp. 1368, 1371 (N.D.Ill.1990) ("It is well settled that forum selection clauses such as this one [referring to 'all eventual differences arising from this contract'] apply not only to strictly breach of contract claims but also to tort claims which require interpretation of the contract," citing *Manetti–Farrow*, 858 F.2d at 514, and the tort claims in question did involve interpretation of the contract); *Advent Elec., Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D.Ill.1989) (fact that plaintiff did not plead a breach of contract claim did not preclude application of a forum selection clause to the

claims made, because "[c]ourts have uniformly held that regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract the forum selection clause governs the action," citing, *inter alia, Manetti–Farrow,* 858 F.2d at 514, and *Coastal Steel,* 709 F.2d at 203); *Stephens v. Entre Computer Ctrs, Inc.,* 696 F.Supp. 636, 638 (N.D.Ga.1988) (rejecting argument that forum selection clause did not apply because the plaintiff had filed tort claims as well as ones sounding in contract, and finding clause referring to "any action" applied to tort claims, because it covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract," citing *Stewart,* 810 F.2d at 1070); *Ronar, Inc. v. Wallace,* 649 F.Supp. 310, 313–14 (S.D.N.Y.1986) (rejecting argument that contractual forum selection clause applies only to a tort claim that is a contract claim disguised or alternatively pleaded as a tort, in part because such "rather nice distinctions" were inappropriate, and because they were unnecessary in the face of a "very simple and very broad" forum selection clause stating that West German courts "shall have jurisdiction and venue," which raised no distinctions between contract and tort claims); *and compare S–Fer Int'l, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 213–14 (S.D.N.Y. 1995) (the forum selection clause was too narrow to apply to tort claims of fraud in the inducement, because it stated that any "legal suit or action for enforcement of any obligation contained herein" would be in the specified forum, and the claim asserted did not involve enforcement of any obligations under the contract; the court contrasted the narrowness of the forum selection clause with the relative breadth of the choice-of-law clause, which included claims concerning "validity" of the contract within its scope); *Berrett v. Life Ins. Co. of the Southwest,* 623 F.Supp. 946, 948–49 (D.C.Utah 1985) (forum selection clause was inapplicable to torts that did not relate to interpretation of the contract).

***iii. The forum selection clause in this case.*** In the present case, the court has already found that the forum selection clause was fairly negotiated, valid, and reasonable. *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

The court also has no hesitation in finding that Terra's tort claims, negligent design, construction, warning, and training, and strict liability design claims, bear the necessary relationship to the contractual relationship of the parties. At the very least, they "directly or indirectly" relate to the parties' contractual relationship. *Farmland Indus., Inc.,* 806 F.2d at 852; *see also Lambert,* 983 F.2d at 1121; *Manetti–Farrow,* 858 F.2d at 514; *Coastal Steel,* 709 F.2d at 203; *Bense,* 683 F.2d at 721–22. As to the negligence claim, it is apparent that "the reality [is] that the [Terra–MCC licensing agreement] is the basic source of any duty" MCC had to Terra concerning the equipment the alleged failure or malfunction of which is the focus of this litigation. *Coastal Steel,* 709 F.2d at 203. Although Terra asserts that the tort duties, and specifically the basis for the strict-liability claim, are independent of the parties' contractual relationship, it is apparent to the court that both non-contract claims "ultimately depend on the existence of a contractual relationship." *Coastal Steel,* 709 F.2d at 203. But for the licensing agreement, there would be no claims to be made. Furthermore, it is apparent from the nature of the claims, relating to the design of licensed equipment and the performance of obligations under the agreement licensing that equipment to ensure that installations and operations were proper, and which further relate to whether the equipment at issue is in fact the equipment as licensed under the agreement, "involv[e] the same operative facts as a parallel claim for breach of contract," *Lambert,* 983 F.2d at 1121–22, as well a case in which "resolution of the [non-contract] claims relates to interpretation of the contract." *Manetti–Farrow,* 858 F.2d at 514. Plainly, the tort claims Terra asserts are "all claims growing out of the contractual relationship" of the parties. *Coastal Steel,* 709 F.2d at 203.

Thus, the court turns to application of the second principle, the principle that "artful pleading" of tort claims should not succeed in evading a contractual forum selection clause. *Lambert,* 983 F.2d at 1121; *Coastal Steel,* 709 F.2d at 203. The court in *Coastal Steel* specifically rejected as "artful pleading" ar-

guments that a forum selection clause did not relate to design defect claims concerning equipment at issue in the contract. *Coastal Steel*, 709 F.2d at 203. Because of the breadth of the alleged negligence claim, in particular, it is apparent that Terra could have asserted a "parallel" breach of contract claim, and even more apparent that the tort claims here arise from the same operative facts as would any breach of contract claim. *Lambert*, 983 F.2d at 1121–22. It is likely that at least one of the reasons tort claims have been asserted, rather than just contract claims, is the differences in damages available for each sort of claim, but another possible reason, when one considers the factual relationship between the two kinds of possible claims, is an effort to avoid the application of the forum selection clause in the contract between the parties. Furthermore, the language of the forum selection clause in this case is broad enough to encompass the tort claims asserted here, so that pleading tort causes of action cannot properly evade the application of the clause. *See, e.g., Stewart Org., Inc.*, 810 F.2d at 1070 (it was "clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer-manufacturer relationship," because it referred to "*any* 'case or controversy arising under or in connection with this Agreement'"); *Vijuk Equip., Inc.*, 728 F.Supp. at 1371 ("It is well settled that forum selection clauses such as this one [referring to 'all eventual differences arising from this contract'] apply not only to strictly breach of contract claims but also to tort claims which require interpretation of the contract," citing *Manetti–Farrow*, 858 F.2d at 514); *Stephens*, 696 F.Supp. at 638 (a forum selection clause referring to "any action" applied to tort claims, because it covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract," citing *Stewart*, 810 F.2d at 1070); *Ronar, Inc.*, 649 F.Supp. at 313–14 (a "very simple and very broad" forum selection clause stating that West German courts "shall have jurisdiction and venue" raised no distinctions between contract and tort claims).

The court therefore concludes that the forum selection clause is applicable to the claims Terra asserts in this litigation. Treating this applicable forum selection clause as a "significant factor that figures centrally in the district court's calculus" under § 1404(a), *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244, and, indeed, finding it to be the only factor in the transfer analysis to tip the balance decisively one way or the other in this case, the court concludes that MCC's motion to transfer this litigation to Mississippi should be granted, and, consequently, Terra's motion to enjoin permanently the Mississippi litigation must be denied.[33]

### C. Certification For Interlocutory Appeal

■■■ As the Eighth Circuit Court of Appeals observed, appellate courts do not generally exercise jurisdiction over transfer orders, but will "do so when the order to transfer has the effect of refusing an injunc-

---

33. Although Terra argued that it was improper to shift to it, the nonmovant on the transfer question and the filer of the first-filed lawsuit, the burden of demonstrating why it should not be bound by its contractual choice of forum, it cited no authority for that proposition. Instead, Terra relied on authority for the more general proposition, articulated in cases in which a forum selection clause was not part of the transfer analysis, that MCC, the movant for transfer, should retain the burden of demonstrating that transfer is appropriate. However, the only authority known to the court to address which party bears the burden in the specific circumstances presented here supports shifting the burden to Terra. *See Jumara*, 55 F.3d at 880; *Huntingdon Eng'g & Environmental, Inc.*, 882 F.Supp. at 57–58; *Weiss*, 801 F.Supp. at 1278. The court has therefore cast its discussion of whether the forum selection clause tips the balance in favor of the Mississippi forum in terms of whether Terra has met its burden to show that the forum selection clause should *not* be honored. The court finds, however, that even if the burden remained with MCC, MCC met that burden. MCC has demonstrated that the parties bargained for and agreed to a reasonable, valid, and applicable forum selection clause, and that the forum selection clause is therefore entitled to significant weight in any transfer analysis. In this case, MCC has demonstrated that the forum selection clause is entitled to determinative weight, because all other factors show the balance is essentially "flat" or those factors weighing in favor of the Iowa forum are insufficient to outweigh the parties' preference for the Mississippi forum as indicated by the forum selection clause.

tion and the motion for injunction and the order to transfer are inextricably bound up with each other." *Midwest Motor Express, Inc.,* 70 F.3d at 1016 (citing 28 U.S.C. § 1292(a)(1); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 343 (8th Cir.1990); *United States Fire Ins. Co. v. American Family Life Assur. Co. of Columbus, Georgia,* 787 F.2d 438, 439 (8th Cir.1986); and *Emerson Elec. Co. v. Black & Decker Mfg. Co.,* 606 F.2d 234, 237 (8th Cir.1979)). This appears to be exactly such a case in which transfer and injunction issues are "inextricably bound up," and therefore this court assumes that it is inevitable that there will be appellate review of its disposition of the Gordian tangle of the applicability of the first-filed rule and the transfer motion, because the court's resolution of the transfer motion has had the effect of refusing Terra's motion for an injunction against MCC's litigation in Mississippi. *Id.* The position of the Eighth Circuit Court of Appeals regarding the general unreviewability of decisions to transfer a case on a motion pursuant to § 1404(a) is in accord with the conclusions of other courts. *See, e.g., Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 30 (3d Cir.1993) ("Generally, 'orders transferring venue are not immediately appealable,'" quoting *Carteret Sav. Bank, FA v. Shushan,* 919 F.2d 225, 228 (3d Cir.1990)). However, some courts have found that an order transferring a case may be reviewed by a petition for a writ of mandamus. *See In re Warrick,* 70 F.3d 736, 739 (2d Cir.1995)

(court of appeals may review by petition for writ of mandamus an order of a district court within the circuit transferring a case to a district outside of the circuit, and review is for abuse of discretion; likelihood of review is enhanced if the party objecting to transfer moved to stay the transfer, and the stay was denied; furthermore, ordinarily jurisdiction of the court of appeals of the circuit of the transferor court is lost once transfer papers are lodged with the clerk of the transferee court); *Sunbelt Corp.,* 5 F.3d at 30 ("Mandamus is ... the appropriate mechanism for reviewing an allegedly improper transfer order," because such an order is not ordinarily appealable); *Landmark Land Co., Inc. v. Office of Thrift Supervision,* 948 F.2d 910, 913 (5th Cir.1991) (on petition for writ of mandamus to review an order transferring a lawsuit pursuant to § 1404(a), the appellate court found that the transfer was improper as a matter of law, because the transferee district was not one in which the action "might have been brought," but determined that, because it had stayed the transfer, a writ need not issue, because the appellate court was "confident" that the "able" district court would vacate its own transfer order in light of the ruling).[34]

In the present case, the court believes the denial of Terra's motion for a permanent injunction, inextricably bound up as it is with the granting of MCC's motion to transfer, will be reviewable pursuant to 28

---

**34.** The Eighth Circuit Court of Appeals, and other circuit courts of appeals, will more readily review *denial* of a motion to transfer. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988) (proper question before the court of appeals is whether the district court abused its discretion in denying a motion to transfer); *United States v. Copley,* 25 F.3d 660, 662 (8th Cir.1994) (court could not review transfer order of court outside circuit transferring case to district inside circuit, but could review decision of district court within circuit that was "implicit denial of ... motion to retransfer" back to the former district); *accord Robinson,* 74 F.3d at 260 (upon review of denial of transfer, court of appeals upheld decision as "no abuse of discretion"); *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1300–01 (D.C.Cir.1996) (review is available for denial of transfer under either § 1404(a) or § 1406(a) and the review is for abuse of discretion); *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) (review of denial

of transfer under § 1404(a) is for "clear abuse of discretion by the trial judge"); *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1257 (4th Cir.1991) (appellate court could not review an order of a district court in another circuit transferring a case into the circuit, but could review the decision of a district court in the circuit refusing to retransfer the action; review of denial of retransfer by a district court in the circuit was for abuse of discretion); *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1136 (6th Cir.1991) (court of appeals could only review denial of motion to retransfer by district court in circuit, not grant of transfer motion by district court out of circuit; review was for abuse of discretion under § 1404(a)); *Petition of Int'l Precious Metals Corp.,* 917 F.2d 792, 794 (4th Cir. 1990) (mandamus is not available to challenge *denial* of transfer, because "other adequate means to attain the relief desired," in the form of appeal after final judgment, is available).

U.S.C. § 1292(a)(1). *See Midwest Motor Express, Inc.,* 70 F.3d at 1016. The court recognizes, however, that the Eighth Circuit Court of Appeals will ultimately determine its own jurisdiction to hear any appeal, and recognizes further that the Eighth Circuit Court of Appeals has in the past expressed its distaste for using the extraordinary power of a writ of mandamus to review a transfer order. *See Toro Co. v. Alsop,* 565 F.2d 998, 1000 (8th Cir.1977) (stating that the court of appeals "has never looked with favor on the use by a disappointed litigant of the extraordinary writ of mandamus to secure an interlocutory review of an order entered pursuant to § 1404(a)," but considering a review pursuant to § 1292(b)), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1978). Not wishing to deprive the parties of any appropriate means of obtaining review of the critical issues upon which it has here ruled, the court will also make the necessary findings to allow the parties to pursue an interlocutory appeal of its grant of the transfer motion pursuant to 28 U.S.C. § 1292(b). *See, e.g., Michael v. I.N.S.,* 48 F.3d 657, 661 (2d Cir.1995) (finding that interlocutory appeal of a § 1404(a) transfer order was not available without the necessary certification of the district court pursuant to § 1292(b)); *Chapple v. Levinsky,* 961 F.2d 372, 374 (2d Cir.1992) (per curiam) (same); *Kotlicky v. United States Fidelity & Guaranty Co,* 817 F.2d 6, 7 n. 1 (2d Cir.1987) (same).

 In a recent decision, the Eighth Circuit Court of Appeals considered the standards applicable to an interlocutory appeal pursuant to § 1292(b). *See White v. Nix,* 43 F.3d 374 (8th Cir.1994). The court held that "[t]he requirements of § 1292(b) are jurisdictional," and the statute should be used with care to avoid piece-meal appeals. *Id.* at 376. Thus, the court stated that § 1292(b) "'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in an-

titrust and similar protracted cases.'" *Id.* (quoting S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260). Thus, the statute should be used "sparingly" and the burden, on the movant, is a heavy one to show that the case is an "exceptional" one in which immediate appeal is warranted.[35] *Id.* Nonetheless, the court's certification of interlocutory appeal is reviewed for abuse of discretion. *Id.* (finding abuse of discretion in that case in failure to consider whether the appeal involved a controlling question of law.). The court therefore reiterated that § 1292(b) establishes three criteria that must be met for certification by the court: "the district court must be 'of the opinion that' (1) the order 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion'; and (3) certification will 'materially advance the ultimate termination of the litigation.'" *Id.* at 377.

 The court is of the opinion that this order involves controlling questions of law, such as the impact of the § 1404(a) factors upon the application of the first-filed rule, and the question of the proper construction and effect of the forum selection clause in question here in the transfer analysis, among others. On each of these questions, the court has identified the respective arguments of the parties and relevant authorities, which this court finds establish that there is substantial ground for difference of opinion, and the court's own view is that this ruling has involved a number of very close legal questions. As to the third criterion, whether certification will "materially advance the ultimate termination of the litigation," *id.,* the court notes that merely deciding which of two fora could entertain one lawsuit might well have little impact on advancing the ultimate termination of the litigation. However, when the question is effectively whether and into which forum *two* lawsuits filed in different federal districts should be consolidated,

---

**35.** No party here has yet moved for certification of interlocutory appeal. Nonetheless, this court, reading the plain language of the statute, believes that if it "shall be of the opinion that such order" meets the criteria of the statute, it may certify the matter for interlocutory appeal *sua sponte.* At oral argument, when the court announced its intention to certify the questions resolved in this ruling for an interlocutory appeal, whatever the court's disposition of the venue motions, the court heard no objections and understood the parties to embrace the opportunity for such an interlocutory appeal.

determination of whether the district court has resolved the venue questions properly will materially advance the ultimate termination of the litigation between the parties.

▉ Finally, also in the interest of allowing the parties the opportunity to perfect an interlocutory appeal on the transfer and injunction issues, the court finds that it should stay transfer of this case to the Mississippi federal court. 28 U.S.C. § 1292(b) (interlocutory appeal must be sought within ten days after entry of the order); *see also In re Warrick,* 70 F.3d at 739 (where party seeking review of transfer order by petition for writ of mandamus failed to move the district court to stay its transfer order, court of appeals had only limited mandamus power, allowing it to require the district court to request that the transferee court return the cause); *Michael,* 48 F.3d at 661 (interlocutory appeal of transfer order pursuant to § 1292(b) could not be entertained where district court did not certify the question for such interlocutory appeal and did not stay its transfer order); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.,* 43 F.3d 843, 845–46 (3d Cir.1994) (district court had jurisdiction to certify for interlocutory appeal its order to transfer pursuant to § 1406(a) where court had stayed its transfer order and process of physically transferring files had not yet begun). Therefore, the court will stay its transfer order until completion of an interlocutory appeal, if any.

### III. CONCLUSION

Because the proper disposition of the pending motions has involved resolution of several factual and legal questions, the court will summarize here each of its conclusions. This entails untangling one by one the knotted strands of legal reasoning that have led the court to the conclusion that Terra's motion for a permanent injunction must be denied, and MCC's motion to transfer must be granted. The court first concluded that the propriety of a permanent injunction on the Mississippi litigation, on the basis of application of the "first-filed" rule, as Terra requested, was intertwined with the question raised in MCC's motion to transfer this lawsuit to Mississippi federal court. The court concluded that a "transfer analysis" that dictated transfer of this litigation to another forum pursuant to 28 U.S.C. § 1404(a) would constitute "compelling circumstances" sufficient to overcome application of the first-filed rule. Thus, only if MCC's motion to transfer was denied would it be possible to grant Terra's motion for a permanent injunction on the Mississippi litigation.

Furthermore, the court concluded that such a "compelling circumstances" ground for disregarding the first-filed rule was the only ground presented in the circumstances of this case. Specifically, the court rejected either party's assertion of bad faith conduct by the other as grounds for rejecting the first-filed rule or for finding the second-filed action had been merely vexatious. The court also rejected MCC's assertion of a broad "dead heat" rule, which would have disregarded the first-filed rule simply because the two lawsuits were filed within hours of each other, finding that such a broad "dead heat" rule never stood alone, but also depended upon other factors favoring disregard of the first-filed rule. The court also rejected Terra's assertion of a narrow "dead heat" rule, which would have allowed the court to consider other factors only when the court was faced with "substantially simultaneous" filings and could not tell which lawsuit had been filed first. Instead, the court found that even in cases where the times of filings differed by many days, the court considered other factors, including a balance of convenience, before deciding whether to apply or disregard the first-filed rule, and, furthermore, considered other factors even in cases where it could not tell which lawsuit had been filed first before resorting to determinations of the proper forum by lot.

The court then embarked on a "transfer analysis," weighing various factors enumerated in or relevant under the applicable "transfer" statute, 28 U.S.C. § 1404(a), to determine whether these lawsuits should go forward in one forum or the other. The court identified three broad and overlapping categories of factors, including "balance of convenience," "interest of justice," and "other relevant factors." Considering these factors in the circumstances of this lawsuit, the

court found that balance of the relevant matters under each was essentially "flat," and therefore did not authorize a shifting of the inconvenience of litigating in a "foreign" forum from one party, MCC, to the other, Terra. The question then became whether the presence of a forum selection clause weighed in favor of transferring this lawsuit to Mississippi.

The court therefore considered in some detail the impact of a forum selection clause upon a "transfer" analysis, finding that such a clause is ordinarily entitled to "significant," but not "dispositive," weight in the transfer analysis. However, the presence of a forum selection clause shifted the burden from the movant for transfer, MCC, to the party opposing transfer, Terra, to demonstrate why it should not be bound by its contractual choice of forum. Terra attempted to meet this burden by arguing that the forum selection clause was entitled to no weight, not significant weight, because it was "permissive" rather than "mandatory." The court, however, came to the contrary conclusion, finding that the forum selection clause is mandatory and exclusive. The court found the clause is not just a consent to the jurisdiction of the Mississippi federal court, but instead requires that any and all disputes to which it applied "will" be brought in federal court in Mississippi. The court found "will" to be every bit as mandatory a statement as "shall" or "must." Furthermore, the court concluded that even if the forum selection clause was somehow "permissive," it still embodied the parties' preference as to the proper forum and therefore weighed significantly in a discretionary transfer analysis, even if it did not state a required forum, which might be of concern had the court been asked to "enforce" the clause as a matter of law.

Terra's next ground for disregarding the significant weight ordinarily given a forum selection clause was that the forum selection clause was inapplicable to the tort claims asserted in its lawsuit against MCC. Terra made one argument, based on syntax, that the forum selection clause was specifically restricted to contractual disputes, based on the placement of the word "hereunder" in the clause, or that the tangled syntax rendered the clause ambiguous, and therefore amenable to interpretation through evidence outside of the document. The court found the clause was neither vague nor ambiguous, and concluded that "hereunder" as used in the forum selection clause had the sense of identifying the parties whose disputes would be settled in the selected forum to be the parties to the contract. Next, the court found that even if the forum selection clause expressly applied only to contractual disputes, in general, a forum selection clause also indicates the proper forum for tort claims that are directly or indirectly related to the contractual relationship of the parties and that might otherwise escape the scope of the clause through "artful pleading." Having found the clause in question here neither invalid nor unreasonable, the court also had no hesitation in finding that the tort claims asserted by Terra bear the necessary relationship to the contractual relationship of the parties, and could not, by artful pleading, evade the scope of the clause. Thus, the forum selection clause is applicable to the claims Terra asserts in this litigation.

Once untangled, the strands of legal reasoning may be traced back to the question of how the opposing venue motions should be resolved. Because the forum selection clause is applicable to the claims Terra has brought, it is an expression of the parties' preference as to the proper forum for this litigation. Because it is an expression of the parties' preference, it weighs "significantly" in the transfer analysis, particularly in a case in which the court has found no balancing of other factors tips decisively towards one forum or another. Thus, the forum selection clause is "dispositive" here only because of the circumstances of this case. The forum selection clause dictates that the proper forum is not this district, but the Southern District of Mississippi. That forum is not displaced by consideration of any of the other § 1404(a) factors in a "transfer" analysis. Consequently, the "transfer" analysis points to the Mississippi forum. Because the "transfer" analysis dictates transfer of this litigation, there are "compelling circumstances" for overcoming the first filing of Terra's claims in this district, and Terra's resistance to transfer and its argument for

enjoining the Mississippi litigation are thus overcome.

The court's determination that this lawsuit, arising from an explosion in Iowa, should properly be litigated in federal court in Mississippi may be perceived as odd when location of the cataclysmic event underlying this litigation is the only factor considered. However, a proper disposition of Terra's motion for a permanent injunction on the Mississippi litigation and MCC's motion to transfer this litigation to Mississippi has involved consideration of multiple factors. The court has found that only one of these factors requires disturbing Terra's choice of forum. That factor is the parties' prior written agreement to litigate any disputes between them to which their choice of forum is applicable in federal court in Mississippi. Terra's claims arising from the explosion are such claims. No other factor tipping the balance decisively in favor of one forum or another, therefore, the court has simply honored the parties' bargained-for contractual preference.

Thus, Terra's motion to enjoin the litigation in Mississippi must be **denied,** and MCC's motion to transfer this litigation to Mississippi pursuant to § 1404(a) must be **granted.** This matter is transferred to the United States District Court for the Southern District of Mississippi, Western Division. However, the questions decided in this ruling are certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and transfer of this matter is **stayed** pending disposition of an interlocutory appeal, if any.

**IT IS SO ORDERED.**